# EXHIBIT C



**General Star National Insurance Company**
**120 Long Ridge Road**
**STAMFORD, CONNECTICUT 06902-1843**

## REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY

## DECLARATIONS PAGE

### THIS IS A CLAIMS-MADE AND REPORTED POLICY

PLEASE READ THIS POLICY AND ALL ENDORSEMENTS AND ATTACHMENTS CAREFULLY.

Policy Number:   NJA363443A                      Renewal of Number:   NJA363443

1. **NAMED INSURED:** MDLV LLC
   **DBA:** ONE Sotheby's International Realty
   **STREET ADDRESS:** 1430 S Dixie Hwy, Coral Gables, FL 33146

2. **POLICY PERIOD:**   Inception Date:  11/30/2020          Expiration Date:  11/30/2021
   Effective 12:01 a.m. Standard Time at the street address of the **Named Insured**.

3. **LIMIT OF LIABILITY:**
   Each **Claim**:     $3,000,000
   Aggregate:     $3,000,000

   > **CERTIFIED COPY**
   > This policy is certified to be complete and contains all forms and endorsements applicable to this policy based on the best knowledge and information currently available.
   >
   > 08/10/2021     *Katherine Exson*
   > Date
   > Authorized Signature  - Katherine Exson

4. **CLAIMS EXPENSES:**
   ☐  a.   Are included within the Limit of Liability
   ☒  b.   Have a separate Limit of Liability

5. **DEDUCTIBLE:**
   Each **Claim**: $ 25,000
   ☐  a.   The deductible amount specified above applies to **Damages** only.
   ☒  b.   The deductible amount specified above applies to both **Damages** and **Claims Expenses**.

6. **RETROACTIVE DATE:** 11/30/2004
   If a date is indicated, this Policy will not provide coverage for any **Claim** arising out of any act, error, omission or **Personal Injury** which occurred before such date.

7. **ANNUAL PREMIUM:** ▉▉▉▉▉▉

8. **ENDORSEMENTS:**
   This Policy is made and accepted subject to the printed conditions in this Policy together with the provisions, stipulations and agreements contained in the following form(s) or endorsement(s).
   RE 10 0001 05 17, SGN 90 0001 07 10, RE 00 0001 05 17, RE 04 0003 05 17, RE 04 0010 05 17, RE 04 0011 05 17, RE 04 0013 05 17, RE 04 0014 05 17, RE 04 0015 05 17, RE 04 0018 05 17, RE 04 0019 05 17, RE 04 0020 05 17, RE 11 0012 05 17, RE 11 0016 05 17, RE 20 0002 05 17, RE 20 0003 05 17, RE 21 0002 05 17, RE 21 0010 05 17, RE 21 0015 05 17, RE 27 0006 05 17, RE 01 0009FL 05 17, RE 08 0002 08 18, RE 21 0004 05 17

9. **PRODUCER NAME: Norman-Spencer Agency LLC**
   **STREET ADDRESS:** 8075 Washington Village Drive Dayton, OH 45458

   Authorized Representative

Producer Code:  26480                      Class Code: 73127
Date:   12/06/2019

## GENERAL STAR NATIONAL INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SIGNATURE PAGE

IN WITNESS WHEREOF the **GENERAL STAR NATIONAL INSURANCE COMPANY** has caused this Policy to be signed by its President and Secretary at Stamford, Connecticut.
.

**GENERAL STAR NATIONAL INSURANCE COMPANY**

_____
Secretary

_____
President

**General Star National Insurance Company**
P.O. BOX 10360
**STAMFORD, CONNECTICUT 06904–2354**
(A stock insurance Company, herein called the Company)

*NOTICE*

## REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY

**THIS IS A CLAIMS-MADE AND REPORTED POLICY**

THIS REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY PROVIDES COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS. THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO ONLY THOSE **CLAIMS**, THAT ARISE FROM **PROFESSIONAL SERVICES** RENDERED ON OR AFTER THE RETROACTIVE DATE AS STATED ON THE DECLARATIONS PAGE AND BEFORE THE END OF THE **POLICY PERIOD**, WHICH ARE FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** AND FIRST REPORTED IN WRITING TO THE COMPANY DURING THE **POLICY PERIOD** OR APPLICABLE EXTENDED REPORTING PERIOD.

PLEASE REVIEW THE POLICY CAREFULLY, THIS POLICY CONTAINS IMPORTANT EXCLUSIONS AND CONDITIONS. ALL WORDS OR PHRASES (OTHER THAN CAPTIONS) THAT ARE PRINTED IN BOLD FACE ARE DEFINED IN THE POLICY.  PLEASE DISCUSS ANY QUESTIONS CONCERNING THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

**WHAT TO DO IN CASE OF A CLAIM**

THE **Named Insured** must comply with the reporting procedures of **Section V – DUTY TO REPORT A POTENTIAL CLAIM OR CLAIM(S)** of this Policy by contacting the Company in writing as follows:

General Star Management Company
Casualty Claims
P.O. Box 1255
Stamford, CT 06904
Fax: 866-914-3151
E-Mail: GStarClaims@generalstar.com

Note: Failure to promptly report a **Claim** could jeopardize your coverage

**IMPORTANT**
This Policy is not effective unless a Declaration Page is issued.

**TABLE OF CONTENTS**

SECTION      I     -   COVERAGE………………………………………………………………3

SECTION      II    -   WHO IS INSURED……………………………………..…………………4

SECTION      III   -   LIMITS OF LIABILITY AND DEDUCTIBLE…………………………5

SECTION      IV    -   TERRITORY…………………………………………………………6

SECTION      V     -   DUTY TO REPORT A POTENTIAL CLAIM OR CLAIM(S)…………...……6

SECTION      VI    -   SUPPLEMENTARY PAYMENTS……………………………………....7

SECTION      VII   -   EXCLUSIONS……………………………………………………..……8

SECTION      VIII  -   DEFINITIONS………………………………………………….....…12

SECTION      IX    -   AUTOMATIC AND OPTIONAL EXTENDED REPORTING PERIODS.....16

SECTION      X     -   GENERAL CONDITIONS…………………………………………18

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

**THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE REVIEW THE POLICY CAREFULLY.**

**General Star National Insurance Company**, herein called the Company, agrees with the **Named Insured** as shown in the Declarations Page which is made a part of this Policy, in consideration of the payment of the premium, and in reliance upon the statements on the **Application** and the Declarations Page and subject to the Limits of Liability, exclusions, conditions and other terms of this Policy, as follows:

| SECTION I - COVERAGE |
|---|

A. **Damages**

The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Insured** during the **Policy Period** and first reported to the Company in writing during the **Policy Period** or applicable Extended Reporting Period, arising out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured;** provided always that such act, error, omission or **Personal Injury** takes place:

1. During the **Policy Period**; or

2. Prior to the **Policy Period** provided that:
   a. Such act, error, omission or **Personal Injury** took place on or after the Retroactive Date as stated on the Declarations Page of this Policy; and
   b. At the Inception Date of this Policy no **Insured** had knowledge of any fact, circumstance, situation, act, error, omission or **Personal Injury** that may reasonably be expected to give rise to a **Claim(s)** or **Suit** against an **Insured**.

B. **Defense**

The Company shall have the right and duty to defend any **Claim** against the **Insured** seeking **Damages** to which this insurance applies even if any of the allegations of the **Claim** are groundless, false or fraudulent. However, the Company shall have no duty to defend the **Insured** against any **Suit** seeking **Damages** to which this insurance does not apply.  For **Claims** covered by this Policy**,** the Company, at its option, shall select and assign defense counsel; however, the **Insured** may engage additional counsel, solely at its own expense, to associate in the defense of any covered **Claim**.  The **Insured** shall not assume any obligations, incur any costs, charges, or expenses or enter into any settlement without the Company's consent.

The Company shall also have the right to negotiate the settlement, as it deems expedient, but the Company shall not commit the **Named Insured** to any settlement without the **Named Insured's** consent. If the **Named Insured** refuses to consent to any settlement recommended by the Company, and elects to contest the **Claim** or continue any legal proceedings in connection with such **Claim,** then the Company shall be relieved of any further duty to defend the **Claim.** Thereafter, the Company shall have the right, but not the obligation, to withdraw from further defense of such **Claim** by tendering control of said defense to the **Insured.**  The maximum amount the Company shall pay for **Damages** and **Claims Expenses** shall not exceed the amount for which the **Claim** could have been settled, including the **Claims Expenses** incurred or authorized by the Company up to the date of such refusal.

In no event shall the Company be obligated to pay **Damages** or **Claims Expenses** or to defend, or continue to defend, any **Suit** after the applicable Limit of Liability as stated on the Declarations Page has been exhausted by payments of **Damages** or **Claims Expenses**.

C. **Coverage Extensions**

Subject to Paragraphs A and B above, the following coverage extensions are made part of this insurance.

1. **Fair Housing Discrimination**
   **Claims** based on or arising out of **Fair Housing Discrimination** will be subject to a sub-limit of $100,000 in the aggregate, regardless of the number of **Claims** per **Policy Period**, for **Damages** and/or **Claims Expenses** that shall be a part of, and not in addition to, the applicable Limit of Liability as shown on the Declarations Page.

2. **Open House**
   **Claims** based on or arising out of an **Open House** will be subject to a sub-limit of $50,000 in the aggregate, regardless of the number of **Claims** per **Policy Period**, for **Damages** and/or **Claims Expenses** that shall be a part of, and not in addition to, the applicable Limit of Liability as shown on the Declarations Page.

---

## SECTION II – WHO IS INSURED

Each of the following is an **Insured** under this Policy to the extent set forth below:

A. If the **Named Insured** is designated as an independent contractor in the **Application**, then coverage is only afforded to the individual designated as the **Named Insured** on the Declaration Page;

B. The entity or person designated as the **Named Insured**;

C. Any **Predecessor Firm** or **Successor in Business** of the **Named Insured**;

D. Any past or present partners, officers, directors, stockholders, members, managing members or employees of any person or entity specified in Paragraphs A or B of this Section, but only with respect to **Claims** arising out of any act, error, omission or **Personal Injury** in the rendering or failure to render **Professional Services** that took place while acting within the scope of their duties on behalf of such person or entity and while employed by such person or entity;

E. Any **Salesperson**, **Short Term Escrow Agent** or licensed real estate appraiser but only with respect to **Claims** arising out of any act, error, omission or **Personal Injury** in the rendering or failure to render **Professional Services** on behalf of any person or entity specified in Paragraphs B or C of this Section;

F. Any Franchisor(s) of the **Named Insured**, but only when such Franchisor(s) is named in a **Claim** arising out of any act, error, omission or **Personal Injury** in the rendering or failure to render **Professional Services** by any **Insured** other than the Franchisor(s).

G. The estate, heirs, executors, administrators, assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy.

H. The lawful spouse or qualifying domestic partner of any past or present partner, officer, director, member, managing member or employee of any person or entity specified in Paragraphs A, B or C of this Section, but only with respect to **Claims** arising out of any act, error, omission or **Personal Injury** in the rendering or failure to render **Professional Services** on behalf of any person or entity specified in Paragraphs A, B or C of this Section. The Company has no obligation under this Policy to pay **Damages** or **Claim Expenses**, or to provide a defense, in connection with any **Claim** arising from any act or services actually or allegedly provided by the spouse or domestic partner of any individual to whom this Policy otherwise provides coverage.

I. Any personal assistant of an **Insured** who is a past or present partner, officer, director, member, managing member, employee or **Salesperson** of any person or entity specified in Paragraphs A or B of this Section but only with respect to **Claims** arising out of any act, error, omission or **Personal Injury** in the rendering or failure to render **Professional Services** on behalf of any person or entity specified in Paragraphs B or C of this Section.

---

**SECTION III – LIMITS OF LIABILITY AND DEDUCTIBLE**

---

A.  The Limits of Liability shown on the Declaration Page and the rules below, establish the most the Company will pay regardless of:
   1.  **Insureds**;

   2.  **Claims** made or **Suits** brought; or

   3.  Persons or organizations making **Claims** or bringing **Suits**.

B.  The "Aggregate" Limit of Liability as shown on the Declaration Page is the most the Company will pay for the sum of all **Claims** covered by the Policy, as follows:
   1.  In the event **Claims Expenses** are included within the Limit of Liability as shown on the Declaration Page, the "Aggregate" Limit of Liability is the most the Company will pay for **Damages** and **Claims Expenses** resulting from all **Claims** covered by this Policy ; or

   2.  In the event **Claims Expenses** have a separate Limit of Liability as shown on the Declaration Page, the "Aggregate" Limit of Liability is the most the Company will pay for **Damages** resulting from all **Claims** covered by this Policy.  A separate "Aggregate" Limit of Liability, in an amount equal to the "Aggregate" Limit of Liability applicable to **Damages**, is the most the Company will pay for **Claims Expenses** resulting from all **Claims** covered by this Policy.

C.  Subject to Paragraph B. above, the "Each **Claim**" Limit of Liability as shown on the Declaration Page is the most the Company will pay for each **Claim** covered by this Policy as follows:
   1.  In the event **Claims Expenses** are included within the Limit of Liability as shown on the Declaration Page, the "Each **Claim**" Limit of Liability is the most the Company will pay for **Damages** and **Claims Expenses** resulting from each **Claim** covered by this Policy; or

   2.  In the event **Claims Expenses** have a separate Limit of Liability as shown on the Declaration Page, the "Each **Claim**" Limit of Liability is the most the Company will pay for **Damages** resulting from each **Claim** covered by this Policy.  A separate "Each **Claim**" Limit of Liability, in an amount equal to the "Each **Claim**" Limit of Liability applicable to **Damages** is the most the Company will pay for **Claim Expenses** resulting from each **Claim** covered by this Policy.

D.  Subject to Paragraph B. or C. above, whichever applies, all related **Claims** or all **Claims** based upon or arising from the same act or related acts, errors, omissions or **Personal Injuries** regardless of the number of **Insureds**, **Claims**, **Suits** filed, or persons or organizations making **Claims** or filing **Suits** shall be considered a single **Claim** for the purpose of this insurance, and shall be subject to the same Limit of Liability. All such **Claims** shall be considered first made at the earliest of the date the first **Claim** was made or the date the act, error, omission or **Personal Injury** was first reported to the Company.

E.  All related acts, errors, omissions or **Personal Injuries** are deemed to have taken place at the time the first related act, error, omission or **Personal Injury** took place.

F.  Subject to Paragraph B. or C. above, whichever applies, the Company will pay only in excess of the applicable Deductible as shown on the Declaration Page, as follows.  If the Deductible applies to:
   1.  "**Damages** Only" as shown on the Declaration Page, the **Insured's** obligation to pay **Damages** as the result of any single **Claim** shall be the Deductible amount specified as "Each **Claim**" shown on the Declaration Page.  The Company will pay **Damages** from each covered **Claim** in excess of that amount in addition to all **Claims Expenses** resulting from each covered **Claim**; or

   2.  "Both **Damages** and **Claims Expenses**" as shown on the Declaration Page, the **Insured's** obligation to pay both **Damages** and **Claims Expenses** as the result of any single **Claim** shall be the Deductible amount specified as "Each **Claim**" shown on the Declaration Page.  The Company will pay **Damages** and **Claims Expenses** from each **Claim** covered by this Policy in excess of that amount.

G.  Subject to Paragraph F. above, if this Policy provides separate "Aggregate" Limits of Liability for **Damages** and

for **Claim Expenses**, and the Deductible amount applies to "Both **Damages** and **Claim Expenses**", the **Insured** is obligated to pay the Deductible amount once per "Each **Claim**" for the combined costs of **Damages** and **Claims Expenses**.

H.   The **Named Insured** shall remit the applicable Deductible within thirty (30) days of the Company's written demand.

I.   The Limits of Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the Inception Date of the **Policy Period** shown on the Declarations Page, unless the **Policy Period** is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Liability.

J.   In the event the **Insured** participates in an **Alternative Dispute Resolution** to settle a **Claim**, the Company will waive 50% of the **Named Insured's** Deductible obligation. However, if the **Alternative Dispute Resolution** fails to resolve the **Claim**, and the **Claim** proceeds to litigation, the full Deductible as shown on the Declarations Page will apply without the 50% waiver to any **Damages** and **Claims Expenses** incurred once the litigation has commenced. The maximum amount of this waiver shall not exceed $25,000 per **Claim**.

K.   The **Named Insured's** obligation to pay the Deductible as shown on the Declarations Page shall be waived for amounts not exceeding $5,000, provided that the following conditions are met and documentation of such is provided to the Company with notice of **Claim**:
1.   A seller disclosure form was signed by the seller and acknowledged by the buyer prior to closing;

2.   A home inspection was completed and a copy was provided to the buyer prior to closing or a home inspection was waived in writing by the buyer prior to closing; and

3.   A state or local board approved standard sales contract was utilized.

The **Named Insured's** obligation to pay the Deductible as shown on the Declarations Page shall not be waived if any **Insured** individually acted as both buyer's and seller's agent in the transaction, which gave rise to a **Claim**.

L.   There are no separate or additional Limits of Liability for any Extended Reporting Period.

---

## SECTION IV – TERRITORY

To be covered under this Policy, a **Claim** must be made and maintained, and a **Suit**, if any, must be brought and maintained within the United States of America, its territories, possessions, Puerto Rico or Canada.

## SECTION V – DUTY TO REPORT A POTENTIAL CLAIM OR CLAIM(S)

A.   **Duties in the Event an Insured Becomes Aware of a Potential Claim**

If, during the **Policy Period,** an **Insured** becomes aware of any act, error, omission or **Personal Injury,** which took place on or after the Retroactive Date, as stated on the Declarations Page of this Policy, or during the **Policy Period,** that might reasonably be expected to give rise to a **Claim**, the **Insured** must notify the Company in writing as soon as practicable, but in no event later than the end of the **Policy Period.** Any **Claim** that subsequently arises out of such act, error, omission or **Personal Injury** shall be considered to be a **Claim** made and reported during the **Policy Period** in which such written notice of the potential **Claim** was first received by the Company. Such notice of potential **Claim** shall include all demand letters and the fullest information obtainable surrounding the act, error, omission or **Personal Injury**.

B.   **Duties In the Event of a Claim**

If, during the **Policy Period** or applicable Extended Reporting Period, a **Claim** is made against any **Insured** to which this insurance applies, the **Insured** must:

1. Immediately record the specifics of the **Claim** or **Suit** and the date received;

2. Provide the Company with written notice of the **Claim** or **Suit** as soon as practicable, but in no event after the end of the **Policy Period** or any applicable Extended Reporting Period; and

3. Immediately send the Company copies of any demand letters, pleadings, notices, summonses, or other legal papers received in connection with the **Claim** or **Suit**.

**SECTION VI – SUPPLEMENTARY PAYMENTS**

A. **Supplementary Payments**

The Company will pay, in addition to the applicable Limit of Liability:

1. Reasonable and necessary expenses incurred by the **Insured** at the Company's request to assist the Company in the investigation of a **Claim**, including up to $750 each day for an individual **Insured's** actual loss of earnings because of the **Insured's** attendance at a trial, hearing or arbitration proceeding involving a **Suit** against the **Insured** for covered **Damages**, but the amount so payable for any one or series of trials, hearings or arbitration proceedings arising out of the same act, error, omission or **Personal Injury** shall in no event exceed a limit of $15,000 for each individual **Insured** and subject to a maximum limit of $50,000 in the aggregate per **Policy Period** for all **Insureds**.

2. Up to $10,000 in the aggregate regardless of the number of **Supplementary Payment Requests**, for attorney's fees, and other costs, expenses or fees of the **Insured** resulting from the investigation or defense of a proceeding before a state licensing board, local real estate board or governmental regulatory body incurred as the result of a notice of a proceeding excluding commission or fee disputes.

3. Up to $10,000 in the aggregate regardless of the number of **Supplementary Payment Requests**, for attorney's fees and other costs, expenses or fees resulting from a subpoena to an **Insured** for documents or testimony arising out of **Professional Services** covered under this Policy, provided that:
   a. The subpoena arises out of a **Suit** to which no **Insured** is a party; and
   b. No **Insured** has been engaged to provide advice, expert witness or testimony in connection with the **Suit,** nor has any **Insured** been engaged to provide such advice, expert witness or testimony in the past.

   Immediately upon any **Insured** becoming aware of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** that could reasonably be expected to be the basis of a **Claim**, written notice shall be given by the **Insured**, or its representatives, to the Company, together with the fullest information obtainable.

4. Up to $5,000 in the aggregate, regardless of the number of **Supplementary Payments Requests**, from the **Costs of Third Party Notification**, as required by applicable State or Federal Privacy statutes, due to the loss, disclosure or dissemination of confidential data as a result of an **Insured's** act, error, omission, or **Personal Injury**, and for the cost or fees for services of outside consultants or firms retained by the **Named Insured**:
   a. To mitigate, prevent, or decrease the possibility of further loss as a result of **Electronic Information Damages**;
   b. To investigate and verify the cause, amount or extent of **Electronic Information Damages**;
   c. To contain, eradicate and recover the loss, disclosure or dissemination of confidential data as a result of **Electronic Information Damages**.

   **Costs of Third Party Notification** and **Electronic Information Damages** must be incurred by the **Named Insured** during the **Policy Period**.

5. Up to $5,000 in the aggregate, regardless of the number of **Supplementary Payment Requests**, for direct loss of or damage to the personal property of the **Named Insured** or personal property of the client, held in an **Insured's** care, custody and control, resulting from **Dishonest Acts** committed by any employee acting alone or in collusion with other persons. However, this paragraph does not apply to **Dishonest Acts**

committed by any agent, broker, commissioned merchant, consignee or independent contractor.

6. Prejudgment interest awarded against the **Insured** on that part of the judgment the Company pays.

7. Post-judgment interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

B. **Supplementary Payments Conditions**

1. Supplementary Payments shall apply to **Supplementary Payment Requests** first made against the **Insured** during the **Policy Period** and first reported to the Company in writing during the **Policy Period** or any applicable Extended Reporting Period, arising out of any act, error, omission, **Personal Injury** or, when applicable, **Dishonest Acts** in the rendering of or failure to render **Professional Services** by the **Insured**; provided always that such act, error, omission, **Personal Injury** or, when applicable, **Dishonest Acts** take place on or after the Retroactive Date, as stated on the Declarations Page, and before the end of the **Policy Period**. However, this Policy shall not afford coverage for Supplementary Payments if at the inception of the **Policy Period** the **Insured** had knowledge of any fact or circumstance that may reasonably be anticipated to give rise to a **Supplementary Payment Request**.

2. The Deductible amount shown on the Declarations Page shall not apply to any Supplementary Payments.

---

### SECTION VII - EXCLUSIONS

The Company has no obligation under this Policy to pay **Damages** or **Claims Expenses** or to provide a defense, in connection with any **Claim(s)**:

A. Under any part of this Policy if based on or arising out of the following:
1. Any:
   a. Dishonest, fraudulent, criminal, knowingly wrongful, willful, malicious or intentional act, error, omission or **Personal Injury**;
   b. Intentional misrepresentation; or
   c. Willful, intentional or knowing violation of the laws, statutes, rules or regulations (including, but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), or other actual or alleged violations of state or federal anti-trust, price-fixing, restraint of trade or deceptive trade practice laws, rules or regulations).

   However, this exclusion shall not apply to strictly vicarious liability of an innocent **Insured**, whose conduct, as stated in this exclusion, was not committed by, at the direction of or with the knowledge of such innocent **Insured**.

   The **Insured** shall reimburse the Company for all **Claim Expenses** incurred if the **Insured's** acts, errors, omissions or **Personal Injury** are found to be a conduct stated in this exclusion.

2. Any disputes involving any **Insured's** fees, commissions or charges, the failure to pay or collect premium, escrow or tax money, or the conversion, misappropriation, commingling or embezzlement of funds or other property. However, in the event a **Claim** is made against an **Insured** seeking both the return of escrow money and alleging an act, error, omission or **Personal Injury** in the performance of **Professional Services** covered under this Policy, the Company will defend such **Claim** without any obligation to reimburse the **Insured** for the payment of monies held as escrow.

3. Any action, including any actual or threatened legal action, made by any **Insured** against any other **Insured**. However, this exclusion does not apply to a **Claim** arising solely out of **Professional Services** by such any other **Insured** in a broker-client relationship with the **Insured**, who made the **Claim**; provided further that the **Insured**, who made the **Claim**, was not acting within the scope of duties for the **Named Insured**, as described by **SECTION II – WHO IS INSURED**, when **Professional Services** took place.

4.   The rendering of or failure to render **Professional Services** by any **Insured** serving in any position or in any capacity for any entity not listed on the Declarations Page.

5.   Any:
     a.   **Bodily Injury**; or
     b.   **Property Damage**; however, the exclusion for **Property Damage** does not apply to the extent coverage is described in this Policy, to **Claims** arising out of **Electronic Information Damages**, employee **Dishonest Acts**, **Lock Box** or **Open House**.

6.   Any actual or alleged violation of any workers' compensation, unemployment compensation, disability or pension benefits law, or any similar laws, including but not limited to, the Employee Retirement Income Security Act of 1974 (ERISA), or any of its amendments, or any other similar state or local law, or any non-qualified plan, while any **Insured** is acting as a fiduciary with the meaning of said laws.

7.   Any actual or alleged violation of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any state "blue sky" or securities law, or any similar state or federal statutes, or common law principles of liability.

8.   The rendering of or failure to render **Professional Services** by any **Insured** in the representation of clients in any securities transaction (either registered or exempt) including but not limited to bond or other debt offerings, public stock offerings, property syndication or real estate investment trusts.

9.   a.   The sale or purchase of insurance or bonds; or
     b.   The failure to effect, maintain or advise of the need for, adequate levels or types of insurance or bonds.

10.  Any liability assumed by an **Insured** under any oral or written contract or agreement, including any warranty, except that this exclusion shall not apply to liability the **Insured** would have in the absence of such contract, agreement or warranty.

11.  Any activities of an **Insured** as a mortgage banker, mortgage counselor, mortgage broker, **Business Broker**, independent third party escrow agent, contractor, **Construction Manager**, construction advisor, builder, construction or property inspector, property developer, insurance agent, insurance broker, asset manager, title abstractor, attorney or title agent.

12.  The actual or attempted purchase of real property by any **Insured**.

13.  a.   The formation, syndication, operation or administration of any property syndication, real estate investment trust or any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, buying, or selling real property including those syndications, trusts, corporations, partnerships or joint ventures in which an **Insured** has, had or intended to have a participating interest directly or indirectly in the profit or losses thereof; or
     b.   The actual or attempted sale, leasing or **Property Management** of property developed, constructed or owned by:
          (1)  Any **Insured**;
          (2)  Any entity in which any **Insured** has a financial interest;
          (3)  Any entity which has or had a financial interest in the **Named Insured**; or
          (4)  Any entity which is under the same financial control as the **Named Insured**,

          provided that such financial interest or financial control existed at the time of the act, error, omission or **Personal Injury** giving rise to the **Claim**.

          This exclusion b. does not apply to:
          (a)  The actual or attempted sale or leasing of an **Insured's Residential Property** that an **Insured** did not construct or develop and where the **Residential Property** is listed by another **Insured** who is not the owner of such **Residential Property**.
          (b)  The actual or attempted sale or leasing of real property that an **Insured** did not construct or develop, and in which the combined ownership interest of all **Insureds** at the time of sale or lease was less than 25%;

(c) The actual or attempted sale of **Residential Property** that an **Insured** did not construct or develop that is, at such time, 100% owned by the **Named Insured**, and if all of the following conditions are met:

    (i) The property was acquired by the **Named Insured** under a written Guaranteed Sales Listing Agreement; and

    (ii) From acquisition to resale:

        i. The title to the property was held by the **Named Insured** for less than twelve months; and

        ii. The property was continually offered for sale by the **Named Insured**.

(d) The actual or attempted sale of an **insured's Residential Property** that an **Insured** did not construct or develop if all of the following conditions are met in connection with such sale:

    (i) An accredited written Home Inspection Report is issued or waived in writing by the buyer prior to closing;

    (ii) All state required property transfer disclosures were properly completed, signed and delivered; and

    (iii) That the most current version, in effect at the time, of a state or board approved standard purchase / sale contract was utilized.

(e) The actual or attempted leasing of real property in which the combined ownership interest of all **Insureds** was less than 50% at the time of the **Professional Services** rendered.

14. The actual or attempted appraisal of property by any **Insured** if at the time of the act, error, omission or **Personal Injury** giving rise to the **Claim**:
    a. Any **Insured** in any part owned such property;
    b. Any **Insured** was the developer, builder, real estate broker or **Salesperson** of such property;
    c. Such appraisal services were in exchange for stock, partial ownership or investment in such property; or
    d. Any **Insured** was employed or subcontracted by a real estate broker or **Salesperson** who was a party to any transaction involving the appraised property.

15. Alleging infringement of any copyright, title, slogan, patent, trademark, trade name, trade dress, service mark or service name.

16. Any guarantee or promise of future status, performance or valuation in the course of performing **Professional Services** by the **Insured**.

17. The actual or alleged notarized certification or acknowledgement by any **Insured** of a signature on any document that the **Insured** did not witness being placed on the document.

18. Any **Asbestos**, any exposure to **Asbestos** or the use of any **Asbestos** including but not limited to:
    a. Any injury, disease or illness, including death at any time resulting there from;
    b. Any damage to or reduction in financial value of any property;
    c. Any misrepresentation of or failure to detect or disclose the existence, manufacturing, construction disturbance or migration of any **Asbestos**;
    d. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any **Asbestos**;
    e. Any obligation to assess the presence, absence or amount or effect of any **Asbestos;** or
    f. Any other loss or expense relating to or resulting there from.

19. Any **Fungus(i), Mold(s),** bacteria or **Spore(s)** including:
    a. Any substance, vapor or gas produced by or arising out of any **Fungus(i), Mold(s),** bacteria or **Spore(s)**;
    b. Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any **Fungus(i), Mold(s),** bacteria or **Spore(s)**;
    c. Any testing for, monitoring, abatement, mitigation, removal, remediation, or disposal of any **Fungus(i), Mold(s)** bacteria or **Spore(s)**;

      d.   Any failure to test for, monitor, abate, mitigate, remove, remediate, or dispose of any **Fungus(i), Mold(s),** bacteria or **Spore(s)**;

      e.   Any supervision, instruction, recommendations, warnings, or advice given or which should have been given in connection with the above;

      f.   Any misrepresentation of or failure to detect or disclose of any exposure to any **Fungus(i), Mold(s),** bacteria or **Spore(s)**; or

      g.   Any obligation to share **Damages** with or repay anyone else who must pay **Damages** in connection with Paragraphs a. through f. above.

The above applies regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence to an injury or damage.

20.  Any Pollution or **Pollutants** including:

      a.   **Damage** which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

      b.   Any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of  **Pollutants**; or

      c.   Any **Claim** by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

      d.   Any misrepresentation of or failure to detect or disclose of any exposure from pollution or any **Pollutant**.

21.  The **Insured** gaining of any personal profit or advantage to which any **Insured** is not legally entitled, including misappropriation, conversion, embezzlement, commingling or misuse of funds or other property.

22.  Any lead including:

      a.   The installation, removal, disposal, handling, use or existence of, exposure to, contact with, or the ingestion of lead paint or any other substance or matter containing lead paint or the residue of lead paint; or

      b.   Any misrepresentation of or failure to detect or disclose of any exposure to any lead paint or any other substance or matter containing lead paint or the residue of lead paint.

23.  Discrimination of any kind by any **Insured**, Including but not limited to discrimination due to or on the basis of age, sex, race, color, religion, disability, marital status, pregnancy, national origin, HIV or AIDS status, sexual origin, sexual orientation, or sexual preference; provided, however, this exclusion does not apply to **Fair Housing Discrimination**.

24.  Any **Insured's** unauthorized use of confidential, privileged or non-public material or information for any purpose whatsoever.

25.  Any activities arising out of **Exterior Insulation and Finish Systems** (commonly referred to as synthetic stucco) application, installation, use or sale.

26.  Actual or alleged acts, error, omissions or **Personal Injuries** by an **Insured** against any past or present employee, officer or applicant for employment as respects to sexual misconduct, sexual harassment, wrongful termination, or discrimination, including but not limited to discrimination due to or on the basis of age, sex, race, color, religion, disability, marital status, pregnancy, national origin, HIV or AIDS status, sexual origin, sexual orientation, or sexual preference.

B.  Under Paragraph A.4. and A.5. of **SECTION VI – SUPPLEMENTARY PAYMENTS** is based on or arising out of the following:

1.  The malfunction of or defect of **Network Communications System**;

2.  The electrical failure including electrical power interruption, surge, brownout or blackout;

3.  The interruptions or outages to gas, water, telephone, cable or satellite services furnished by utility

companies;

4.  Any criminal or **Dishonest Act** that any partner, officer, director, or managing member of the **Named Insured** commits whether acting alone or in collusion with other persons;

5.  Any criminal or **Dishonest Act**, the only proof of which as to its existence or amount is:
    a.  An **inventory com**putation; or
    b.  A profit and loss computation; or

6.  Any loss caused by any civil authority, including seizure, confiscation, destruction, or quarantine of property.

---

## SECTION VIII – DEFINITIONS

A.  **Application** means all signed applications for this Policy, Including any attachments and other materials submitted in conjunction with the signed application(s).

B.  **Alternative Dispute Resolution** means the use of mediation or non-binding arbitration proceedings in which the **Insured** participates with the consent of the Company.

C.  **Asbestos** shall include but is not limited to: asbestos or other mineral wools; asbestos or mineral wool products, fibers, or dust, asbestos or other mineral wools contained in products or materials.

D.  **Bodily Injury** means bodily injury, sickness, disease, emotional distress or mental anguish sustained by a person, including death resulting from any of these at any time.

E.  **Business Broker** means the activities of an **Insured** in the provision of information and business advice to buyers and sellers of privately held businesses sold in conjunction with the leasing or sale of real property. The activities would include the maintenance of communications between parties, and the coordination of negotiations and closing processes. **Business Broker** does not mean activities by any **Insured** on any transaction involving real property, if any **Insured** was the developer, constructor or owner, in whole or in part, of such property.

F.  **Claim(s)**, including **Claims** based on or arising out of **Lock Box**, **Open House** or **Fair Housing Discrimination**, means a demand for money, the filing of **Suit** or the initiation of arbitration or mediation proceedings naming the **Insured** and alleging an act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services**.

   **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief, or administrative proceedings before any national, state, regional or local board of real estate agents, or any committee or sub-committee, except as defined by **Supplementary Payment Requests** and made available in Paragraph A.2. of **SECTION VI – SUPPLEMENTARY PAYMENTS**.

G.  **Claims Expenses** means:
    1.  Fees charged by an attorney(s) designated by the Company and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by the Company, or by an **Insured** with written consent of the Company, but does not include salary charges or expenses of regular employees or officials of the Company, or fees and expenses of independent adjusters;

    2.  All court costs taxed against an **Insured** in a **Claim**. However, these costs do not include attorneys' fees or attorneys'' expenses taxed against the **Insured**; or

    3.  Premiums on appeal bonds and premiums on bonds to release attachments in **Suits**, but not premiums for bond amounts in excess of the applicable Limit of Liability. Notwithstanding the forgoing, the Company shall have no obligation to pay for or furnish any bond.

H.  **Construction Manager** means a person providing the following services in connection with the construction,

reconstruction or renovation of real property:

1. Management of facility construction, reconstruction or renovation plans;

2. Development and management of construction, reconstruction or renovation contracts and subcontracts;

3. Development of loss control and risk management plans in connection with the construction, reconstruction or renovation.

I. **Costs of Third Party Notification** means all costs of the **Insured** associated with the notification of current or previous clients or other parties including reasonable, applicable and necessary legal fees, other than **Claims Expenses,** incurred in connection with such notification.

J. **Damages** means compensatory judgments, settlements or awards, but does not include punitive or exemplary damages, fines or penalties, sanctions, the return of fees or other consideration paid to the **Insured,** or that portion of any award or judgment caused by the trebling or multiplication of actual damages under federal or state law. **Damages** does not include matters uninsurable in the jurisdiction governing this Policy. **Damages** does not include **Claims Expenses**.

However, if a **Suit** is brought against an **Insured** with respect to a **Claim** for an alleged act, error, omission or **Personal Injury** falling within the scope of coverage afforded by this Policy, and such **Suit** seeks both compensatory and punitive or exemplary damages then the Company will afford a defense to such action without liability for payment of such punitive or exemplary damages.

K. **Dishonest Acts** means dishonest or fraudulent acts committed with the apparent intent to cause an **Insured** to sustain loss or **Damages** and to obtain financial benefit for the employee or for any other employee, person, or organization. The financial benefit does not include salaries, commissions, bonuses, fees, profit sharing, or other employee benefits; however, this definition only applies to Paragraph A.5. of **SECTION VI – SUPPLEMENTARY PAYMENTS**.

L. **Electronic Information Damages** means damage arising out of the unauthorized and third party:
1. Destruction or addition or deletion of information that was entrusted to an **Insured** by others and that was resident on the **Named Insured's Network Communications System**;

2. Copying or theft of any information resident on **Network Communications System**; or

3. Use or alteration of any software resident on **Network Communications System**.

M. **Exterior Insulation and Finish System** means any exterior cladding or finish system used on any part of any structure, and consisting of any or all of the following, or similar, processes or applications:
1. A rigid or semi rigid insulation board made of expanded polystyrene or other materials;

2. The adhesive and or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced base coat; and

4. A finish coat providing surface texture and color.

N. **Fungus(i)** means any type or form of fungus, and includes **Mold** or mildew and any mycotoxins, **Spores**, scents, byproducts produced or released by fungi, smuts, rust, or mushrooms.

O. **Fair Housing Discrimination** means any alleged violations of Title VIII of the Civil Rights Act of 1968 or the Fair Housing Amendment Act of 1988, and any similar federal, state or local ordinance.

P. **Insured** means any person or organization qualifying as an **Insured** under **SECTION II – WHO IS INSURED** of this Policy.

Q. **Lock Box** means any keyless entry system, security code or password protected key storage device or similar

device on property that the **Insured** has shown or listed for sale while the property is in the care, custody or control of the **Insured**.

R. **Mold(s)** means any superficial growth produced on damp or decaying organic matter or on living organisms, and **Fungi** that produce **Mold**.

S. **Named Insured** means the person or organization shown on the Declaration Page as the named insured.

T. **Network Communications System** means any or all of the components, owned and/or controlled by the **Named Insured**, including computers and software, which combine to enable the **Named Insured's** computers to communicate electronically with other computer systems.

U. **Open House** means any advertised, designated time period (up to four hours) when multiple potential buyers have the opportunity to view the specified property that is listed for sale by the **Named Insured** while in the care, custody or control of an **Insured** and with an **Insured** in attendance during the entire duration of such period.

V. **Personal Injury** means:
   1. False arrest, detention or imprisonment, wrongful entry or eviction, other invasion of private occupancy, or malicious prosecution; or

   2. The publication or utterance of a libel, slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

W. **Policy Period** means the period from the Inception Date of this Policy to the Expiration Date as shown on the Declarations Page, or its earlier termination date, if any.

X. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Y. **Predecessor Firm** means any real estate firm which has undergone dissolution and:
   1. Some or all of such firms' principals, owners, officers or partners have joined the **Named Insured**, provided such persons were responsible for producing billings in excess of 50% of the prior firm's annual gross revenues and such prior firm's billings have been assigned or transferred to the **Named Insured**;

   2. At least 50% of the principals, owners, partners or officers of the prior firm have joined the **Named Insured**; or

   3. At least 50% of the prior firm's financial assets and liabilities have been assumed by the **Named Insured**.

Z. **Professional Services** means services performed by an **Insured** in an **Insured's** capacity as a real estate agent, real estate broker, real estate appraiser, real estate consultant, real property auctioneer, or **Property Manager** as long as the **Insured** is properly licensed or certified at the time of the act, error, omission or **Personal Injury** giving rise to the **Claim** and as long as such service is rendered for or on behalf of the customer or client in return for a fee, commission, or other compensation or in the course of solicitation of a client or customer for services which would result in payment of a fee, commission, or other compensation.  It includes incidental services rendered by any **Insured** as a notary public, or as a member of a formal accreditation committee, standards review committee or similar board or committee.

AA. **Property Damage** means physical injury to, destruction of, or loss of tangible property.

AB. **Property Management** means those services provided as a **Property Manager**.

AC. **Property Manager** means a person providing the following services in connection with the management of commercial or **Residential Property**:
   1. Development and implementation of management plans and budget;

2.  Oversight of property;

3.  Solicitation, evaluation and securing of tenants and management of tenant relations, collection of rent and processing evictions;

4.  Development, implementation and management of loss control and risk management plans for real property;

5.  Development, implementation and management of contracts and subcontracts (excluding any insurance contracts) necessary to the daily functioning of the property; or

6.  Personnel administration and record keeping in connection with a managed property.

**Property Manager** does not include and this Policy shall not cover:
a.  Any **Construction Manager**;
b.  Property improvement or maintenance services;
c.  Property repairs performed by an **Insured** or any entity where any **Insured** holds a position or financial interest;
d.  Analyzing, evaluating or making recommendations concerning environmental hazards or exposures; or
e.  Obtaining, maintaining or negotiating any insurance contracts.

AD. **Residential Property** means single family residence or multi-family residence with 4 units or fewer.

AE. **Salesperson** means an independent contractor engaged in practice as a real estate broker, agent, real property auctioneer, or employee of the **Named Insured**, and licensed under all applicable laws of all jurisdictions in which he or she practices.

AF. **Short Term Escrow Agent** means a person(s) who while acting as a real estate agent, real estate broker, or real property auctioneer in connection with the sale or purchase of real property, receives or holds funds in, or distributes funds from, an escrow or trust account.  Such funds:
1.  Must relate to the sale or purchase of a specific real property with the **Short Term Escrow Agent** acting as the real estate agent, real estate broker, or real property auctioneer;

2.  Must be received in the form of United States currency, a certified or guaranteed check or money order;

3.  Must be held in a client trust account or otherwise segregated from the **Insured's** funds; and

4.  Are, or are to be, fully distributed within 12 months from the date received by the **Insured**.

AG. **Spores** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms.

AH. **Successor in Business** means, after dissolution of the **Named Insured**, any firm in which:
1.  Some or all of the principals, owners, officers or partners of the **Named Insured** have joined an existing, or formed a new firm, provided such persons were responsible for producing more than 50% of the **Named Insured's** annual gross revenues at the time of dissolution and such revenues have been assigned or transferred to the successor firm;

2.  At least 50% of the principals, owners, partners or officers of the **Named Insured** have joined an existing or formed a new firm; or

3.  At least 50% of the **Named Insured's** financial assets/liabilities have been assumed by the successor firm.

However, **Successor in Business** shall not include any entity that is also an **Insured** under any similar insurance policy issued by the Company, regardless of such policy's exhaustion of its Limits of Liability.  An entity shall cease to be covered as a **Successor in Business** at the earlier of Policy termination or ninety (90)

days from the date of dissolution of the **Named Insured** unless written notice is given to the Company, together with other information as the Company may request, the Company agrees, in its sole discretion, to continue coverage for the **Successor in Business** and the **Successor in Business** pays any additional premium required by the Company by the applicable deadline.

AI. **Suit** means a civil adjudicatory proceeding in a court of law in the United States of America, its territories, possessions, Puerto Rico or Canada.

AJ. **Supplementary Payment Request** means a written request for money by an **Insured** to the Company for payments covered by **SECTION VI – SUPPLEMENTARY PAYMENTS**.

AK. **Total Disability** means that, as a result of sickness or injury which manifests itself during the **Policy Period** and is substantiated by medical documentation, a partner, officer, director or managing member of the **Named Insured**, is permanently prevented from doing the substantial and material acts required for his or her usual duties for the **Named Insured** at any real estate agency.

---

## SECTION IX – AUTOMATIC AND OPTIONAL EXTENDED REPORTING PERIODS

A. **Automatic Extended Reporting Period**

In the event of cancellation or non-renewal of this Policy by the **Named Insured** or the Company, for any reason except as noted in Paragraph E of this section, an automatic sixty (60) day extended reporting period, effective at the termination of the **Policy Period,** will be provided by the Company at no additional cost. This Automatic Extended Reporting Period shall extend the time in which an **Insured** can give written notice to the Company of **Claims** first made against the **Insured** during the **Policy Period** for any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** taking place on or after the Retroactive Date, as stated on the Declarations, and before the end of the **Policy Period**, subject to terms, limitations, exclusions and conditions of this Policy. The Automatic Extended Reporting Period does not apply to **Claims** that are covered under any subsequent insurance purchased by any **Insured**, or that would be covered but for exhaustion of the amount of insurance applicable to such **Claims**.

B. **Optional Extended Reporting Period**

1. In the event that:
   a. The **Named Insured** or the Company cancels or nonrenews this Policy; or
   b. The Company renews this Policy with a Retroactive Date that is more recent in time than the Retroactive Date provided in this Policy;

   The **Named Insured** shall have the right to an extension of coverage, known as the Optional Extended Reporting Period, for the time period and at the premiums set forth below, for **Claims** first made against an **Insured** and first reported in writing to the Company during the Optional Extended Reporting Period for any act, error, omission, or **Personal Injury** in the rendering of or failure to render **Professional Services** taking place on or after the Retroactive Date, as stated on the Declarations, and before the end of the **Policy Period**, subject to terms, limitations, exclusions and conditions of this Policy.  The right to purchase the Optional Extended Reporting Period shall terminate unless written notice of the **Named Insured's** election together with the full premium is received by the Company or its authorized agent within sixty (60) days of the termination of the **Policy Period**.  The Optional Extended Reporting Period may not be renewed upon its expiration.

2. The Optional Extended Reporting Period is available for the following time periods and premiums:
   a. Twelve (12) months for an additional 100% of the full annual premium;
   b. Twenty-four (24) months for an additional 135% of the full annual premium; or
   c. Thirty-six (36) months for an additional 150% of the full annual premium.

C. **Retiree Extended Reporting Period**

If the **Named Insured** is:
1. An independent contractor and shall cancel or fail to renew this Policy due to retirement of the **Named Insured** from active business;

2. A sole proprietorship and shall cancel or fail to renew this Policy due to retirement of the **Named Insured** from active business; or

3. A partnership, limited liability partnership, or corporation and shall cancel or fail to renew this **Policy** due to dissolution of the partnership or corporation;

Then the **Named Insured** shall, for an additional premium of 160% of the full annual premium for this Policy, shall have the right to a Retiree Extended Reporting Period for an unlimited period following the end of the **Policy Period**.  This Retiree Extended Reporting Period shall extend for an unlimited period of time in which the **Named Insured** can give written notice to the Company of **Claims** first made against the **Insured** during the Retiree Extended Reporting Period for any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** taking place on or after the Retroactive Date, as stated on the Declarations Page, and before the end of the **Policy Period**, subject to the terms, limitations, exclusions, and conditions of this Policy.  The right to purchase the Retiree Extended Reporting Period shall terminate unless written notice of the **Named Insured's** election together with the additional premium is received by the Company or its authorized agent within sixty (60) days of the end of the **Policy Period**.

D. **Death, Disability or Retirement Extended Reporting Period**

In the event the **Named Insured** dies or becomes permanently and totally disabled during the **Policy Period**, an unlimited Extended Reporting Period will be granted at no additional premium, provided that within sixty (60) days of the death or permanent and **Total Disability** the **Named Insured** or **Named Insured's** legal representative requests the Death, Disability or Retirement Extended Reporting Period, subject to:
1. The **Named Insured's** legal representative furnishes written evidence and proof of the date of the **Named Insured's** death; or

2. The **Named Insured** or the **Named Insured's** legal representative provides evidence and proof of the permanent and **Total Disability** including the date of the actual disability and written certification by the **Named Insured's** attending physician; and

3. In the case of permanent and **Total Disability**, the **Named Insured** agrees to submit to any medical examination(s) as requested by the Company, by any physician designated by the Company for the purpose of verifying such permanent and **Total Disability**.

This Death, Disability or Retirement Extended Reporting Period shall extend for an unlimited period of time in which an **Insured** can give written notice to the Company of **Claims** first made against an **Insured** during the Death, Disability or Retirement Extended Reporting Period for any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** taking place on or after the Retroactive Date, as stated on the Declarations Page, and before the end of the **Policy Period**, subject to the terms, limitations, exclusions, and conditions of this Policy.

If after reaching age sixty five (65), and having been continuously insured by the Company on a claims-made basis for a minimum of five (5) years the **Named Insured** retires during the **Policy Period**, this Death, Disability or Retirement Extended Reporting Period will be granted at no additional premium provided that the **Named Insured** within sixty (60) days of the retirement requests the Death, Disability or Retirement Extended Reporting Period.

E. **Applicability of Extended Reporting Periods**

None of the Extended Reporting Periods shall apply if the Policy is rescinded, cancelled or nonrenewed, for any of the following reasons:
1. Non-payment of premiums;

2. Fraud on the part of any **Insured**;

3. Failure to comply with Policy provisions;

4. Non-payment of a Deductible or any advanced payment, which the Company made on behalf of the **Named Insured**;

5. Failure to cooperate with the Company; or

6. Fraud, concealment or material misrepresentation of facts in any **Application** for this Policy or any renewal Policy for this insurance.

F.  **Termination of any Extended Reporting Period Option**

Once in effect, the Optional Extended Reporting Period, Retiree Extended Reporting Period and Death, Disability or Retirement Extended Reporting Period may not be canceled.  At the commencement of any Extended Reporting Period, the entire premium shall be deemed earned and the Company shall not be liable to return to the **Named Insured** any portion of the premium for any Extended Reporting Period.

G.  **Miscellaneous**

1. An Extended Reporting Period does not:
   a.  Increase or reinstate the Limit of Liability of this Policy; or
   b.  Change the scope of coverage provided by this Policy.

2. The Aggregate Limit of Liability available during any Extended Reporting Period shall be the remaining amount, if any, of the "Aggregate" Limit of Liability shown on the Declarations Page at the end of the **Policy Period**.

3. The Automatic Extended Reporting Period does not extend the time in which to exercise the right to:
   a.  Purchase the Optional Extended Reporting Period or the Retiree Extended Reporting Period; or
   b.  Make effective the Death, Disability or Retirement Extended Reporting Period.

4. The first sixty (60) days of the Optional Extended Reporting Period, Retiree Extended Reporting Period or Death, Disability or Retirement Extended Reporting Period shall run concurrently with the Automatic Extended Reporting Period.

5. The Deductible shown on the Declarations Page shall apply to any Extended Reporting Period.

---

**SECTION X – GENERAL CONDITIONS**

---

A.  **Premium**

All premiums for this Policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance.  The **Named Insured** shall maintain records of the information necessary for premium computation and shall send copies of such records to the Company at such times as the Company may direct.

B.  **Assistance and Cooperation of Insured**

All **Insureds** shall fully cooperate with the Company in the defense of any **Claim** made under this Policy.  Upon the Company's request, all **Insureds** shall assist in making settlements, in the conduct of **Suits** and in enforcing any right of contribution, subrogation or indemnity against any person, organization or other insurer which may be liable to the **Insured** or the Company for **Damages** or **Claims Expenses**. An **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  No **Insured** shall, except at the **Insured's** own cost, voluntarily make any payments, assume any

obligation or incur any expense.  An **Insured** may provide for **Alternative Dispute Resolution** with a client under an engagement letter or any other written contract as long as such agreement is executed in writing prior to a **Claim** or such **Insured's** awareness of any act, error, omission or **Personal Injury** that might reasonably be expected to give rise to a **Claim**.

All **Insureds** will consent to the submission of special verdict forms or other written inquiries to the trier of fact for the purpose of determining the basis for the **Insured's** liability and any **Damages** awarded if **Suit** or any other proceeding is brought on the **Claim**.

C. **Assignment**

This Policy may not be assigned without first obtaining the written consent of the Company.  No **Insured's** rights under this Policy are assignable.  If any **Insured** shall die or be adjudged incompetent, this insurance shall terminate for such person, but shall cover the **Insured's** legal representative with respect to liability previously incurred and covered by this insurance.

D. **Legal Action Against The Company**

No action shall lie against the Company unless there has been full compliance with all of the terms of this Policy, or until the amount of the **Insured's** obligation to pay has been finally determined, either by judgment against the **Insured** or by written settlement agreement between the **Insured** and the claimant, entered into with the written consent of the Company.

Any person or organization or the legal representative thereof who has secured a judgment or written settlement agreement shall thereafter be entitled to recover under the Policy to the extent of the insurance afforded by this Policy.  A written settlement agreement means a settlement and release of liability signed by the **Insured** and the claimant with the written consent of the Company.  No person or organization shall have any right under this Policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability nor shall the Company be impleaded in any **Suit** by the **Insured** or his legal representative.

E. **Conformity to Statute**

In the event that any terms, conditions or exclusions of this Policy conflict with any law applicable to the coverage afforded hereunder, the terms of this contract shall, by this statement, be amended to conform to such law or laws.

F. **Other Insurance**

If there is other valid and collectible insurance (whether primary, excess, contingent or qualified self-insurance, including Extended Reporting Period coverage in the **Insured's** previous insurance) which may apply to a **Claim** covered by this Policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limits of liability of all other insurance or qualified self-insurance.

1. When this insurance is excess, the Company shall have no duty under this Policy to defend any **Claim** or **Suit** that any other insurer or qualified self-insurer has a duty to defend.  If such other insurer or self-insurer refuses to defend such **Claim** or **Suit**, the Company shall be entitled to the **Insured's** rights against all other insurers or qualified self-insurers for any **Claims Expenses** and **Damages** incurred by the Company.

2. If a loss occurs involving two or more policies of valid and collectible insurance, each of which provides that its insurance shall be excess, each will contribute pro rata.  The Company's pro rata amount is the ratio of the Company's Limits of Liability to the limits of the other policies.  Only one policy shall have a duty to defend.  The policy with the greatest financial exposure, based on limits of liability of the policies applicable to the loss, shall have the duty to defend.   If no policy has the greatest financial exposure, then the **Insured** and the Company agree to use best efforts with fair and proper reasoning to determine which policy has the duty to defend among all of the insurers (including qualified self-insurers), whose insurance is applicable to the loss.  If the parties cannot agree after using fair and proper reasoning, the Company shall have a duty to defend and advance the amounts the Company believes to constitute covered **Claims**

**Expenses,** until a different decision is negotiated, arbitrated or judicially determined.  At such time, the Company will tender its defense obligations in an orderly manner to the responsible party.  Any amounts so advanced shall apply pro rata to this Policy and shall not apply to or create any presumption of a fair or proper allocation for any other amounts that the Company is obligated.

G. **Subrogation**

To the extent of any payment under this Policy, the Company shall be subrogated to all the **Insured's** rights of recovery against any person, organization or entity, and all **Insureds** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **Insured** shall do nothing after any **Claim** to prejudice or terminate such rights and shall fully cooperate with the Company.  The Company shall not exercise any such rights against any **Insured**.  Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an **Insured** arising from a **Claim** brought about or contributed to by any dishonest, criminal, fraudulent, malicious or illegal acts, errors, omissions or **Personal Injury**.

H. **Cancellation**

This Policy may be canceled by the **Named Insured** by surrender thereof to the Company or any of its authorized representatives or by mailing to the Company written notice stating when thereafter the cancellation shall be effective.

The Policy may be canceled by the Company by mailing to the **Named Insured**, at the address shown on the Declarations Page, written notice stating when not less than sixty (60) days thereafter, or ten (10) days in the case of nonpayment of premium, such cancellation shall be effective.  The mailing of such notice shall be sufficient proof of notice.  The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice either by the **Named Insured** or by the Company shall be equivalent to mailing.

If either the **Named Insured** or the Company cancels, earned premium shall be the prorated amount of the annual premium.  Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective.  The Company's check or the check of its representative mailed as aforesaid shall be sufficient tender of any refund or premium due to the **Named Insured**, provided that if at the time of cancellation the Limit of Liability has been exhausted as a result of a **Claim**, the entire premium shall be considered earned.

I. **Nonrenewal**

The Company may nonrenew this Policy by mailing or delivering to the **Named Insured**, at the address shown on the Declarations Page, written notice of nonrenewal at least sixty (60) days before the expiration date of this Policy.  The offer of renewal Policy terms, conditions, or premium amount different than those in effect prior to renewal does not constitute nonrenewal.

J. **Changes**

The terms of this Policy shall not be waived or changed except by endorsement issued to form a part of this Policy.

K. **Bankruptcy or Insolvency of Insured**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations under this Policy.

L. **Declarations and Application**

By acceptance of this Policy, all **Insureds** agree that the statements in the **Application** are the **Insureds'** agreements and representations, that they shall be deemed material, that this Policy is issued in reliance upon

the truth of such representations, that this Policy embodies all agreements existing between the **Insureds** and the Company or any of its agents relating to this insurance, and they shall be considered as incorporated into and constitute a part of this Policy.

This Policy is not effective unless a Declarations Page is issued.

M. **Reimbursement**

While the Company has no duty to do so, if the Company pays **Damages** or **Claims Expenses**:
1.   Within the amount of the applicable Deductible;

2.   In excess of the applicable Limit of Liability, or

3.   Under a reservation of rights to seek reimbursement, and it is determined that the Company is entitled to reimbursement,

All **Insureds** shall be jointly and severally liable to the Company for such amounts.  Upon written demand, the **Insureds** shall repay such amounts to the Company within thirty (30) days.  Failure to pay any amount indicated may lead to Policy termination.

N. **Liberalization**

If the Company adopts, during the **Policy Period**, any revision that without additional premium would broaden the coverage under this Policy, the broadened coverage will apply to this Policy effective when the provision has been approved by the appropriate regulatory authority.  Such provision shall only apply to **Claims** first made after the date such approval is received by the Company.

O. **Examination of Your Books and Records**

The Company may examine and audit the **Insured's** books and records as they relate to this Policy at any time during the **Policy Period** and up to three (3) years afterward.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FAIR HOUSING DISCRIMINATION SUB-LIMIT
# (DAMAGES AND/OR CLAIMS EXPENSES)

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

Paragraph C.1. of **SECTION I – COVERAGE** is replaced by the following:

**Fair Housing Discrimination**
**Claims** based on or arising out of **Fair Housing Discrimination** will be subject to a sub-limit of $ 250,000    in the aggregate, regardless of the number of **Claims** per **Policy Period**, for **Damages** and/or **Claims Expenses** that shall be a part of, and not in addition to, the applicable Limit of Liability shown on the Declarations Page.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SUPPLEMENTARY PAYMENTS - SUBPOENA ASSISTANCE

This endorsement modifies insurance provided under the following:

### REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY

Paragraph A.3. in **SECTION VI – SUPPLEMENTARY PAYMENTS** is replaced by the following:

A.  **Supplementary Payments**

The Company will pay, in addition to the applicable Limit of Liability:

3.  Up to $50,000 in the aggregate, subject to a maximum of $25,000 per subpoena, regardless of the number of **Supplementary Payment Requests**, for attorney's fees, and other costs, expenses or fees resulting from a subpoena to an **Insured** for documents or testimony arising out of **Professional Services** covered under this Policy, provided that:
    a.  The **Insured** was not acting in the capacity of a real estate appraiser;
    b.  The subpoena arises out of a **Suit** to which no **Insured** is a party; and
    c.  No **Insured** has been engaged to provide advice, expert witness or testimony in connection with the **Suit,** nor has any **Insured** been engaged to provide such advice, expert witness or testimony in the past.

    Immediately upon any **Insured** becoming aware of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** that could reasonably be expected to be the basis of a **Claim**, written notice shall be given by the **Insured**, or its representatives, to the Company, together with the fullest information obtainable.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SUPPLEMENTARY PAYMENTS -
# PROFESSIONAL REPUTATION PROTECTION EXPENSES
# ($25,000 PER REPUTATION EVENT, $50,000 AGGREGATE)

This endorsement modifies insurance provided under the following:

### REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY

A.  The following is added to paragraph A. in **SECTION VI – SUPPLEMENTARY PAYMENTS**:

**Supplementary Payments – Professional Reputation Protection Expenses**

1.  The Company will pay, in addition to the applicable Limit of Liability, up to $50,000 in the aggregate, subject to a maximum of $25,000 per **Reputation Event**, regardless of the number of **Supplementary Payment Requests**, for **Professional Reputation Protection Expenses** incurred by the **Named Insured**, excluding when the **Named Insured** acts in the capacity of a real estate appraiser, in response to a **Reputation Event**.

2.  The **Named Insured** must notify and obtain prior approval from the Company before hiring any public relations firm to handle a **Reputation Event**; otherwise the Company will have no duty under this Policy to provide payment for such **Professional Reputation Protection Expenses.**

B.  The following definitions are added to **SECTION VIII – DEFINITIONS**:

1.  **Reputation Event** means any act, error, omission or **Personal Injury** that the **Named Insured** reasonably believes will have an imminent and materially adverse effect on the total revenues of the **Professional Services** of the **Named Insured** because of diminished confidence by its customers based upon unfavorable information made available by:
    a.  Broadcasts on television or radio; or
    b.  Published both publicly and in writing, whether on paper or in electronic media, provided further that such written media was in general circulation and such electronic media was available to the public on a fully open network that was neither password protected nor restricted from access by any method.

2.  **Professional Reputation Protection Expenses** mean reasonable fees, costs and expenses for consulting services paid to an external public relations firm or crisis management firm, whose engagement is to limit the adverse effects of negative publicity against the **Named Insured** caused by a **Reputation Event**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SUPPLEMENTARY PAYMENTS - REAL ESTATE AGENTS AND BROKERS REGULATORY BOARD PROCEEDINGS

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

Paragraph A.2. in **SECTION VI – SUPPLEMENTARY PAYMENTS** is replaced by the following:

A.  **Supplementary Payments**

The Company will pay, in addition to the applicable Limit of Liability:

2.  Up to $50,000 in the aggregate, subject to a maximum of $25,000 per proceeding, regardless of the number of **Supplementary Payment Requests**, for attorney's fees, and other costs, expenses or fees of the **Insured**, excluding when the **Insured** acts in the capacity of a real estate appraiser, resulting from the investigation or defense of a proceeding before a state licensing board, local real estate board or governmental regulatory body incurred as the result of a notice of a proceeding excluding commission or fee disputes.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SUPPLEMENTARY PAYMENTS - LOSS, DISCLOSURE OR DISSEMINATION OF CONFIDENTIAL INFORMATION DUE TO DATA BREACH

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

Paragraph A.4. in **SECTION VI – SUPPLEMENTARY PAYMENTS** is replaced by the following:

A.  **Supplementary Payments**

The Company will pay, in addition to the applicable Limit of Liability:

4.  Up to $50,000 in the aggregate, subject to a maximum of $25,000 per **Electronic Information Damages** event, regardless of the number of **Supplementary Payments Requests**, from the **Costs of Third Party Notification**, as required by applicable State or Federal Privacy statutes, due to the loss, disclosure or dissemination of confidential data as a result of an act, error, omission, or **Personal Injury** by such **Insured**, excluding  when the **Insured** acts in the capacity of a real estate appraiser, and for the cost or fees for services of outside consultants or firms retained by the **Named Insured**:
    a.  To mitigate, prevent, or decrease the possibility of further loss as a result of **Electronic Information Damages**;
    b.  To investigate and verify the cause, amount or extent of **Electronic Information Damages**;
    c.  To contain, eradicate and recover the loss, disclosure or dissemination of confidential data as a result of **Electronic Information Damages**.

**Costs of Third Party Notification** and **Electronic Information Damages** must be incurred by the **Named Insured** during the **Policy Period**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE EXTENSIONS -
# NOT-FOR-PROFIT DIRECTORS AND OFFICERS COVERAGE

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

The following is added to Paragraph C. **Coverage Extensions** in **SECTION I – COVERAGE**:

**Not-For-Profit Directors and Officers Coverage**

The Company will pay on behalf of the **Insured**, who is partner, officer or director of the **Named Insured**, all **Damages** which the **Insured** is legally obligated to pay and **Claim Expenses** for **Claims** first made against the **Insured** during the **Policy Period** and first reported to the Company in writing during the **Policy Period** or applicable Extended Reporting Period, arising out of any act, error, omission, or **Personal Injury** by the **Insured** in his or her capacity as a director or officer of a not-for-profit organization, as defined by the Internal Revenue Service, other than for political purposes or a labor union. However, the **Insured's** service for the not-for-profit organization must have been disclosed to the Company in the application or other written notification which has been accepted in writing by the Company.

With respect to the coverage provided by this endorsement, the most the Company will pay is:

1.  $15,000 for **Damages** and **Claim Expenses** for each covered **Claim** first made against the **Insured** during the **Policy Period**; and

2.  $30,000 in the aggregate for all **Damages** and **Claim Expenses** for all covered **Claims** first made against the **Insured** during the **Policy Period**,

regardless of the number of not-for-profit organizations or **Insureds**.  The above stated sub-limits are part of, and not in addition to, the applicable Limit of Liability as shown on the Declarations Page.

Coverage hereunder will be excess of all valid and collectible Director's and Officer's liability insurance that is available to the **Insured** and the not-for-profit organization.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May includes copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTINGENT BODILY INJURY OR PROPERTY DAMAGE – CLAIMS RESULTING FROM SPECIFIED ACTS, ERRORS OR OMISSIONS AND PROPERTY MANAGER SERVICES

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

A. Paragraph A.5. in **SECTION VII – EXCLUSIONS** is replaced by the following:

5. Any **Bodily Injury** or **Property Damage**. However, this exclusion does not apply to:

a. (1) Any **Claim** because of **Bodily Injury** or **Property Damage** arising solely out of any **Insured's** act, error or omission resulting from the rendering of or failure to render **Professional Services**, in his or her capacity as a licensed real estate agent or broker, during a listing appointment, property showing or final walk-through before closing, provided that:

(a) Such act, error or omission:

(i) Is the proximate cause of the **Bodily Injury** or **Property Damage**;

(ii) Takes place prior to:

i. The closing of the sales transaction; or

ii. The effective date of any leasing transaction;

(iii) Takes place away from the **Named Insured's** office location(s);

(iv) Did not take place during a home appraisal or home inspection;

(v) Did not involve services as a **Property Manager**;

(b) The resulting **Bodily Injury** or **Property Damage** was not caused by any animal nor did not involve the loss of any animal;

(c) No **Insured**:

(i) Holds or previously held an ownership interest in the property in which such act, error or omission takes place; or

(ii) Is a **Construction Manager**, builder or property developer; and

(d) No other insurance applies to the **Claim** regardless if such insurance is collectible or not.

The most the Company will pay for **Damages** and/or **Claims Expenses** for this coverage, regardless of the number of **Claims** per **Policy Period**, is the applicable Limit of Liability shown on the Declarations Page.

(2) Any **Claim** because of **Bodily Injury** or **Property Damage** arising solely out of any **Insured's** act, error or omission resulting from the rendering of or failure to render services as a **Property Manager**, provided that:

(a) Such act, error or omission is the proximate cause of the **Bodily Injury** or **Property Damage**;

(b) The resulting **Bodily Injury** or **Property Damage** was not caused by any animal nor did not involve the loss of any animal;

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



(c) No **Insured** holds or previously held an ownership interest in the property in which such act, error or omission takes place; and

(d) No other insurance applies to the **Claim** regardless if such insurance is collectible or not.

With respect to this subparagraph a.(2), **Claims** based on or arising out of **Bodily Injury** or **Property Damage** will be subject to a sub-limit of $50,000 in the aggregate, regardless of the number of **Claims** per **Policy Period**, for **Damages** and/or **Claims Expenses** that shall be a part of, and not in addition to, the applicable Limit of Liability shown on the Declarations Page.

As a condition precedent to the coverage provided in subparagraph a., the **Named Insured** agrees and warrants to purchase and maintain in effect during the **Policy Period** comprehensive general liability insurance or a business owners policy that provides premises/operations and products/completed operations coverage for **Bodily Injury** and **Property Damage** in an amount at least equal to the Limits of Liability shown in Item 3 of this Policy's Declarations Page.

b. Any **Claim** because of **Property Damage** arising out of **Electronic Information Damages**, employee **Dishonest Acts**, **Lock Box** or **Open House**, to the extent coverage is described in this Policy. The most the Company will pay for **Damages** and/or **Claims Expenses** for these coverages, regardless of the number of **Claims** per **Policy Period**, will be the sub-limit applicable to each coverage as stated in the Policy.

B. The exclusions stated in **SECTION VII – EXCLUSIONS** apply to this endorsement. In addition, the following exclusions are added to **SECTION VII – EXCLUSIONS**:

1. **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, entrustment to others, or loading or unloading of any auto, aircraft, including any unmanned aircraft, or watercraft.

   This exclusion applies even if the **Claims** against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the act, error, omission, occurrence, accident or event which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any auto, aircraft, including unmanned aircraft, or watercraft.

   This exclusion does not apply to **Claims** based on or arising out of **Property Damage** from unmanned aircraft to the extent that coverage is granted in the Drone Photography Coverage Extension - form number RE 04 0020.

2. **Bodily Injury** to any employee of an **Insured** arising out of his or her employment by the **Insured** or to any obligation of the **Insured** to indemnify or contribute with another employer because of **Damages** arising out of such injury.

3. **Property Damage** to any property owned by any **Insured**.

4. **Bodily Injury** or **Property Damage** based on or arising out of any defect, deficiency, inadequacy or dangerous condition in the:
   a. Design of;
   b. Construction of; or
   c. Building materials used in,

   any current on-going building or other structure construction project or any completed building or other structure construction project, by anyone, including but not limited to, the failure to design or construct in a workmanlike manner. This exclusion applies to any resulting related loss of use, diminution in value, and/or extra expenses incurred while the defect, deficiency, inadequacy or dangerous condition is corrected.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FRAUDULENT ESCROW FUNDS TRANSFER COVERAGE

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

The following is added to Paragraph C. **Coverage Extensions** of **SECTION I – COVERAGE**:

A.  **Fraudulent Escrow Funds Transfer Coverage**

**Claims** based on or arising out of a **Fraudulent Escrow Funds Transfer Wrongful Act(s)** committed by the **Insured** during the **Policy Period** will be subject to a sub-limit of $ 10,000  in the aggregate, regardless of the number of **Claims** per **Policy Period**, for **Damages** and/or **Claims Expenses,** that shall be a part of, and not in addition to, the applicable Limit of Liability as shown on the Declarations Page.

As a condition precedent to the Company providing such coverage, for any disbursement or transfer of $5,000 or more, an **Insured**, prior to the actual disbursing or transferring of any escrow funds, must confirm the legitimacy of the source(s) of the original wire transfer or check request and, if applicable, any subsequent change instructions to the original request by:

1.  Speaking directly by an answered outbound telephone call with the party requesting the escrow funds wire transfer or check and verifying transaction details.  The outbound telephone number must be confirmed by an independent source, such as the Internet or trusted independent third party; and

2.  Documenting in writing, a summary of each conversation, the method used to obtain the phone number, and the funds transfer information obtained and confirmed.   All documentation must be maintained by the **Named Insured**.

No coverage will be provided by this Policy unless there is full compliance with paragraphs **1.** and **2.** above and an **Insured** has also fully complied with the **Named Insured's** other business procedural requirements in disbursing or transferring escrow funds and in reporting suspicious activity.

B.  **Fraudulent Escrow Funds Transfer Coverage Exclusion**

The exclusions stated in **SECTION VII – EXCLUSIONS** apply to this endorsement.  In addition, the following exclusion is added to **SECTION VII – EXCLUSIONS**:

Based on or directly or indirectly arising from the transferring of escrow funds from an account of the **Named Insured** or any account controlled by the **Named Insured** as a result of fraudulent instructions received from a third party except as expressly provided for in the **Fraudulent Escrow Funds Transfer** endorsement attached to this Policy.

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



C.  **Fraudulent Escrow Funds Transfer Coverage Definitions**

The definitions stated in **SECTION VIII – DEFINITIONS** apply to this endorsement.  In addition, the following definitions are added to **SECTION VIII – DEFINITIONS**:

1.  **Fraudulent instructions** means written or verbal communication received from an individual(s) or entity(ies) falsely purporting to be a legitimate party to an escrow fund transaction and soliciting the disbursement or transfer of escrow funds held in the **Named Insured's** account by providing fraudulent wire transfer or check request information and instructions in order to illegally acquire the escrow funds.

2.  **Fraudulent Escrow Funds Transfer Wrongful Act(s)** means any act, error or omission, **Personal Injury** or breach of duty committed by an **Insured** in disbursing or transferring escrow funds by wire transfer or check from the **Named Insured's** account or an account due to receipt of **Fraudulent Instructions**. An **Insured** must have acted in good faith and reliance on the **Fraudulent Instructions** when disbursing or transferring the escrow funds.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DRONE PHOTOGRAPHY COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

A.  The following is added to paragraph C. **Coverage Extensions** in **SECTION I – COVERAGE**:

   3.  **Drone Photography**
   **Claims**  based on or arising out of **Drone Photography** will be subject to a sub-limit of $10,000 in the aggregate, regardless of the number of **Claims** per **Policy Period** for **Damages** and/or **Claims Expenses**, that shall be a part of, and not in addition to, the applicable Limit of Liability as shown on the Declarations Page. **Drone Photography** must be performed solely by an unaffiliated, third party contractor hired by an **Insured**. **Drone Photography** coverage does not apply to:

   a.  **Claims** based on or arising out of any entity in which any **Insured** had or had a financial interest;

   b.  **Claims** based on or arising out of, physical contact with any other aircraft, including airships / blimps or other gas or hot air filled balloons, whether manned or unmanned; or

   c.  Any fines or sanctions assessed by any governmental or regulatory body.

B.  With respect to this endorsement only, the paragraph F. **Claim(s)** in **SECTION VIII – DEFINITIONS** is replaced by the following:

   F.  **Claim(s)**, including **Claims** based on or arising out of **Lock Box**, **Open House**, **Fair Housing Discrimination** or **Drone Photography** means a demand for money, the filing of **Suit** or the initiation of arbitration or mediation proceedings naming the **Insured** and alleging an act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services**.

   **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief, or administrative proceedings before any national, state, regional or local board of real estate agents, or any committee or sub-committee, except as defined by **Supplementary Payment Requests** and made available in Paragraph A.2. of **SECTION VI – SUPPLEMENTARY PAYMENTS**.

C.  With respect to this endorsement only, the following definition is added to **SECTION VIII – DEFINITIONS**:

   **Drone Photography** means the capture of still images or video by a remotely-operated or autonomous unmanned aircraft.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE FOR FAILURE TO DETECT OR DISCLOSE THE EXISTENCE OF SPECIFIED SUBSTANCES AT RESIDENTIAL PROPERTY – CLAIMS EXPENSES INSIDE THE LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

The following are added to **SECTION VII – EXCLUSIONS**:

1. Paragraph A.18.c. does not apply to the failure to detect or disclose the existence of any **Asbestos**.

2. Paragraph A.19.f. does not apply to the failure to detect or disclose the existence of any **Fungus(i)**, **Mold(s)**, bacteria or **Spore(s)**.

3. Paragraph A.20.d does not apply to the failure to detect or disclose the existence of any pollution or any **Pollutant**; and

4. Paragraph A.22.b. does not apply to the failure to detect or disclose the existence of any lead, including lead paint or the residue of lead paint.

However, this endorsement applies only to a real estate transaction involving the sale of **Residential Property**. For the purpose of this endorsement, regardless of the number of **Claims** per Policy Period, **Claims Expenses** shall be a part of, and not in addition to, the applicable Limit of Liability shown on the Declarations Page.

The Company will only provide coverage for **Claim(s)** or **Suit(s)** subject to paragraphs 1., 2., 3. and 4. of this endorsement if all of the following conditions have been met:

a. No **Insured** or any **Insured's** spouse has or had an ownership interest in such **Residential Property**;

b. A seller's real property disclosure statement was completed by the seller and receipt acknowledged by the buyer in writing prior to closing and a copy was retained in an **Insured's** transaction file; and

c. If an **Insured** acted as an agent for the buyer, a statement or disclosure regarding a buyer's right to request testing or inspection for the existence of mold, mildew or fungus was provided and acknowledged by the buyer in writing and a copy was retained in the **Named Insured's** transaction file.

No coverage is provided by this endorsement for **Claims** based on or arising out of any **Bodily Injury** or **Property Damage**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OWNED PROPERTY EXCEPTION – FORM D

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

Paragraph A.13.b. in **SECTION VII – EXCLUSIONS** is replaced by the following:

b.  The actual or attempted sale, leasing or **Property Management** of property developed, constructed or owned by:
   (1)  Any **Insured**;
   (2)  Any entity in which any **Insured** has a financial interest;
   (3)  Any entity which has or had a financial interest in the **Named Insured**; or
   (4)  Any entity which is under the same financial control as the **Named Insured**,

provided that such financial interest or financial control existed at the time of the act, error, omission or **Personal Injury** giving rise to the **Claim**.

This exclusion b. does not apply to any **Claim** based on or arising out of the actual or attempted sale of an **Insured's Residential Property**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

**SECTION II – WHO IS INSURED** is amended to include as an additional **Insured(s)** the person(s), corporation(s) or entity(ies) shown in the Schedule below as respects an act, error, omission or **Personal Injury** caused, in whole or in part, by the rendering of or failure to render **Professional Services** by an **Insured.**

If a Retroactive Date is shown in the Schedule, that date applies solely to the additional **Insured** shown in the Schedule.

SCHEDULE

| Name of Additional **Insured(s):** | **Retroactive Date(s):** |
| --- | --- |
| MDLV II LLC dba ONE Sotheby's International Realty | 03/22/2010 |
| ONE Commercial LLC | 11/30/2018 |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - SELLER'S DEFENSE
# COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

## REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY

A. **SECTION II – WHO IS INSURED** is amended to include a **Seller** as an additional **Insured**, but only as respects this Additional Insured - Seller's Defense Coverage Extension.

B. The following Coverage Extension is added to Paragraph C. of **SECTION I – COVERAGE**:

**Seller's Defense**
The Company shall pay **Claims Expenses** on behalf of the **Seller** for any **Covered Circumstance** first made by a **Buyer** against such **Seller** during the **Coverage Period** resulting from a **Completed Contract** and first reported in writing to the Company during the **Coverage Period**, provided that:

1. The **Seller** was in a broker-client relationship with the **Seller's Broker** for such **Completed Contract**;

2. The **Buyer** made a **Claim** against the **Seller's Broker** in the rendering or failure to render **Professional Services** in conjunction with the **Completed Contract,** and for which coverage for such **Claim** applies under this type of policy issued by the Company to the **Named Insured**; and

3. The **Completed Contract** was executed on or after the Retroactive Date shown on the Declaration Page and before the end of the **Policy Period**.

Any **Claim Expenses** covered under this Additional Insured - Seller's Defense Coverage Extension will be subject to a sub-limit payable by the Company and a deductible the **Seller** is obligated to pay, as shown in the Schedule below:

**SCHEDULE**

| | |
|---|---|
| Sub-Limit: | $27,500 per **Policy Period** for **Claims Expenses** that shall be a part of, and not in addition to, the "Each **Claim**" Limit of Liability applicable to **Claims Expenses** as shown on the Declarations Page. |
| Deductible: | $2,500 each **Covered Circumstance** for **Claims Expenses** |

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



C.  The following exclusions are added to **SECTION VII – EXCLUSIONS** and are applicable only to this Additional Insured - Seller's Defense Coverage Extension:

The Company has no obligation to pay **Claims Expenses** or to provide a defense, in connection with any **Claim(s)** or **Covered Circumstance(s)** under this Additional Insured - Seller's Defense Coverage Extension if based on or arising out of the following:

1.  Any **Damages**.

2.  Any **Covered Circumstance** if at the time when the **Completed Contract** was executed the **Seller** knew or could have reasonably expected to know of any fact, circumstance, situation, act, error, omission or **Personal Injury** that gave or would have given rise to:
    a.  A **Claim** or **Suit** against an **Seller's Broker**; or
    b.  A **Covered Circumstance** against the **Seller**.

3.  **Claims** made by or on behalf of the **Seller** and/or **Buyer** against the **Seller's Broker,** any employee of or other individual retained by the **Seller's Broker**, resulting from the rendering of or failure to render **Professional Services** by or on behalf of the **Seller's Broker**.

4.  Class Action **Suits**.

5.  A counter–claim, cross–complaint or similar action instituted against the **Buyer** by the **Seller**.

6.  Escrow amounts in connection with any **Completed Contract**.

7.  Fluctuation in market value, condition, performance, suitability for use or the zoning of any **Residence**.

8.  **Loss** to a **Residence** known to have been sustained subsequent to the date of a **Completed Contract**.

9.  **Loss** to property not forming a part of the **Residence**.

10. A contract or agreement for the assumption of liability to pay for known **Loss** to any **Residence**.

All other exclusions of the Policy shall apply to this Additional Insured - Seller's Defense Coverage Extension.

D.  The following definitions are added to **SECTION VIII – DEFINITIONS** and are applicable only to this Additional Insured - Seller's Defense Coverage Extension:
1.  **Buyer** means the entity(ies) identified as the purchaser(s) of a **Residence** in a **Completed Contract** executed by the **Seller's Broker**.

2.  **Completed Contract** means a binding contract for the sale of a **Residence**, for which the **Seller** and the **Seller's Broker** were in a broker-client relationship in which the transaction for such sale has closed and documents relating to the transfer of title of such **Residence** have been duly recorded, and further subject to having a home buyer's warranty that was included in such closing documents.

3.  **Coverage Period** means 365 consecutive days beginning on the day of the **Completed Contract** is executed. However, this Additional Insured - Seller's Defense Coverage Extension is concurrently terminated if the Policy is cancelled or nonrenewed sooner.

4.  **Covered Circumstances** means a **Suit**, arbitration, mediation or **Alternative Dispute Resolution** proceedings instituted by the **Buyer** against the **Seller** resulting from a **Completed Contract**.

5.  **Loss** means physical damage to or destruction of tangible property, including all resulting loss of use of the property, or loss of use of tangible property that is not physically damaged.

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



6. **Residence** means a single-family dwelling, condominium or townhouse owned and occupied by the **Seller** or which is temporarily unoccupied during a period not to exceed ninety (90) days prior to the date of a **Completed Contract** and sold to the **Buyer**.

7. **Seller** means the entity(ies) identified as the selling party of a **Residence** in a **Completed Contract** executed by the **Seller's Broker**.

8. **Seller's Broker** means an **Insured**, who is neither a **Buyer** nor **Seller**.

All other definitions of the Policy shall apply to this Additional Insured - Seller's Defense Coverage Extension.

E. When used in the Policy, **Claim** is deemed to also mean a **Covered Circumstance** under this Additional Insured - Seller's Defense Coverage Extension.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - PERFORMANCE BY SPECIFIED ENTITY

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

The following exclusion is added to Paragraph A. of **SECTION VII – EXCLUSIONS**:

The Company has no obligation under this Policy to pay **Damages** or **Claims Expenses** or to provide a defense in connection with any **Claim(s)** arising out of any act, error or omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by or on behalf of the "Specified Person(s) or Entity(ies)" listed below, including but not limited to any partners, directors, officers, principals, members, managing members, agents, subcontractors, independent contractors or employees while acting in the scope of duties for such "Specified Person(s) or Entity(ies)" or its, predecessors, successors, assignees or any organization it acquired, participated in, or formed or over which it has current ownership or control.

Specified Person(s) or Entity(ies):

>One Thousand Museum-Louis Birdman and Fairchild-ROVR Developments and Royal Palm Residences-PC6 Developments and Althea Row Biltmore Row MG Developer and OKAN Tower OKAN Group and Adagio and Marina Palms and Villa Valencia

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - PERFORMANCE FOR SPECIFIED ENTITY

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

The following exclusion is added to Paragraph A. of **SECTION VII – EXCLUSIONS**:

The Company has no obligation under this Policy to pay **Damages** or **Claims Expenses** or to provide a defense in connection with any **Claim(s)** arising out of any act, error or omission or **Personal Injury** in the rendering of or failure to render **Professional Services** for the "Specified Person(s) or Entity(ies)" listed below, including but not limited to any partners, directors, officers, principals, members, managing members, agents, subcontractors, independent contractors or employees while acting in the scope of duties for such "Specified Person(s) or Entity(ies)" or its parents, subsidiaries, affiliates, predecessors, successors, assignees or any organization it acquired, participated in, or formed or over which it has current ownership or control.

Specified Person(s) or Entity(ies):

> One Thousand Museum-Louis Birdman and Fairchild-ROVR Developments and Royal Palm Residences-PC6 Developments and Althea Row Biltmore Row MG Developer and OKAN Tower OKAN Group and Adagio and Marina Palms and Villa Valencia

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

The following exclusion is added to Paragraph A. in **SECTION VII – EXCLUSIONS**:

The Company has no obligation under this Policy to pay **Damages** and/or **Claims Expenses** or to provide a defense, in connection with any **Claim(s)** under any part of this Policy if based on or arising out of the following:

**Recording and Distribution of Material or Information in Violation of Law**

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4.  Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – FAILURE TO MAINTAIN PREMISES, SITE OR LOCATION IN A TENANTABLE OR HABITABLE CONDITION

This endorsement modifies insurance provided under the following:

### REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY

The following exclusion is added to paragraph A. in **SECTION VII – EXCLUSIONS**:

The Company has no obligation under this Policy to pay **Damages** and/or **Claims Expenses** or to provide a defense, in connection with any **Claim(s)** under any part of this Policy if based on or arising out of the following:

**Tenantability, Habitability and Maintenance**

**Claims** based on or arising out of the **Insured's** services as a **Property Manager** or leasing agent for which a **Claim** is made or suit filed alleging the **Insured** failed to maintain any premises, site or location in a tenantable, habitable, livable or usable condition and/or alleging actual or constructive wrongful eviction, violation of any rent stabilization laws and ordinances, and/or violation of any local, state, and/or federal code, law, ordinance, statute, rule or regulation, that relates to the tenantability, habitability, condition, maintenance or upkeep of any premises, site or location, whether this:

1. Arises, in whole or in part, out of a **Claim** and/or allegation that any part of the premises, site or location is or was untenantable, not habitable and/or was improperly maintained;

2. Arises out of a chain of events which includes a **Claim** that any part of the premises, site or location is or was untenantable, not habitable and/or was improperly maintained, regardless of whether the tenantability, maintenance and habitability **Claim** is the initial precipitating event or a substantial cause of the alleged **Damages** or injury; or

3. Arises out of a **Claim** that any part of the premises, site or location at issue is or was untenantable, not habitable and/or was improperly maintained as a concurrent cause of injury, regardless of whether the tenantability, maintenance and habitability **Claim** is the proximate cause of **Damages** or injury.

However, notwithstanding the above, the Company shall provide coverage for **Residential Property** tenantability, habitability and/or maintenance **Claims** subject to a sub-limit of $25,000 in the aggregate, regardless of the number of **Claims** per **Policy Period**, for **Damages** and/or **Claims Expenses** that shall be a part of, and not in addition to, the applicable Limit of Liability shown on the Declarations Page, provided that no **Insured** has any ownership interest in the **Residential Property**. This coverage shall be excess over any other valid and collectible insurance.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF RETIREMENT EXTENDED REPORTING PERIOD

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

Paragraph D. in **SECTION IX – AUTOMATIC AND OPTIONAL EXTENDED REPORTING PERIODS** is replaced by the following:

D.  **Death, Disability or Retirement Extended Reporting Period**

In the event the **Named Insured** dies or becomes permanently and totally disabled during the **Policy Period**, an unlimited Extended Reporting Period will be granted at no additional premium, provided that within sixty (60) days of the death or permanent and **Total Disability** the **Named Insured** or **Named Insured's** legal representative requests the Death, Disability or Retirement Extended Reporting Period, subject to:

1.  The **Named Insured's** legal representative furnishes written evidence and proof of the date of the **Named Insured's** death; or

2.  The **Named Insured** or the **Named Insured's** legal representative provides evidence and proof of the permanent and **Total Disability** including the date of the actual disability and written certification by the **Named Insured's** attending physician; and

3.  In the case of permanent and **Total Disability**, the **Named Insured** agrees to submit to any medical examination(s) as requested by the Company, by any physician designated by the Company for the purpose of verifying such permanent and **Total Disability**.

This Death, Disability or Retirement Extended Reporting Period shall extend for an unlimited period of time in which an **Insured** can give written notice to the Company of **Claims** first made against an **Insured** during the Death, Disability or Retirement Extended Reporting Period for any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** taking place on or after the Retroactive Date, as stated on the Declarations Page, and before the end of the **Policy Period**, subject to the terms, limitations, exclusions, and conditions of this Policy.

If after reaching age sixty five (65), and having been continuously insured by the Company on a claims-made basis for a minimum of three (3) years the **Named Insured** retires during the **Policy Period**, this Death, Disability or Retirement Extended Reporting Period will be granted at no additional premium provided that the **Named Insured** within sixty (60) days of the retirement requests the Death, Disability or Retirement Extended Reporting Period.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

RE 27 0006 05 17                                                                                                Page 1 of 1

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**REAL ESTATE ERRORS AND OMISSIONS INSURANCE POLICY**

A. Paragraph B.2. **Optional Extended Reporting Period** of **SECTION IX – AUTOMATIC AND OPTIONAL EXTENDED REPORTING PERIODS** is replaced by the following:

   2. The Optional Extended Reporting Period is available for the following time periods:
      a. Twelve (12) months;
      b. Twenty-four (24) months; or
      c. Thirty-six (36) months.

   An additional premium will be calculated according to the rates, rules and plans on file with the Florida Office of Insurance Regulation.

B. Condition H. **Cancellation** of **SECTION X – GENERAL CONDITIONS** is replaced by the following:

   H. **Cancellation**

   1. This Policy may be canceled by the **Named Insured** by surrender thereof to the Company or any of its authorized representatives or by mailing to the Company written notice stating when thereafter the cancellation shall be effective.

   2. If this Policy has been in effect for ninety (90) days or less, the Company may cancel this Policy by mailing or delivering to the **Named Insured** written notice of cancellation, accompanied by the reasons for cancellation, at least:
      a. Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or
      b. Twenty (20) days before the effective date of cancellation if the Company cancels for any other reason, except the Company may cancel immediately if there has been:
         (1) A material misstatement or misrepresentation; or
         (2) A failure to comply with the underwriting requirements established by the insurer.

   3. After coverage has been in effect for more than ninety (90) days, no notice of cancellation will be issued by the Company unless it is based on at least one of the following reasons:
      a. Nonpayment of premium;
      b. The Policy was obtained by a material misstatement;
      c. There has been a failure to comply with the underwriting requirements established within ninety (90) days of the effective date of coverage;
      d. There has been a substantial change in the risk covered by the Policy; or

RE 01 0009FL 05 17

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

      e.   The cancellation is for all **Insureds** under such policies for a given class of **Insureds**.

4.  If the Company cancels this Policy for any of the reasons stated in paragraph 3. above, the Company will mail or deliver to the **Named Insured** written notice of cancellation, accompanied by the reasons for cancellation, at least:

    a.  Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

    b.  Forty-five (45) days before the effective date of cancellation if the Company cancels for any other reasons.

5.  The Company will mail or deliver the Company's notice to the **Named Insured's** last mailing address known to the Company.

Notice of cancellation will state the effective date of cancellation and the reason for cancellation. The **Policy Period** will end on that date.

6.  If the Policy is canceled, the Company will send the **Named Insured** any premium refund due.  If the Company cancels, the refund will be pro rata.  If the **Named Insured** cancels, the refund, if any, will be 90% of the pro rata.  If the return premium is not refunded with the notice of cancellation or when this Policy is returned to the Company, the Company will mail the refund within fifteen (15) working days after the date cancellation takes effect, unless this is an auditable policy.

If this is an auditable policy, then, subject to the **Named Insured's** full cooperation with the Company or the Company's agent in securing the necessary data for audit, the Company will return any premium due within ninety (90) days of the date the cancellation takes effect.  If the Company's audit is not completed within the time limitation, then the Company shall accept the **Named Insured's** own audit and any premium refund due shall be mailed within ten (10) working days of the receipt of the **Named Insured's** audit.

The cancellation will be effective even if the Company has not made or offered a refund.

C.  Condition I. **Nonrenewal** of **SECTION X – GENERAL CONDITIONS** is replaced by the following:

   I.  **Nonrenewal**

    1.  If the Company decides not to renew the Policy, the Company will mail or deliver to the **Named Insured(s)** written notice of non-renewal, accompanied the reason for nonrenewal, at least forty-five (45) days prior to the expiration of the Policy.

    2.  Any notice of nonrenewal will be mailed or delivered to the **Named Insured(s)** at the last mailing address known to the Company.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

© Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



**FLORIDA Notice of Toll-Free Telephone Numbers and Procedures for Obtaining Information and Filing Complaints**

## IMPORTANT NOTICE

**To obtain information or make a complaint:**

You may contact your Agent or Producer.

You may call GENERAL STAR NATIONAL INSURANCE COMPANY'S toll-free telephone number for information or to make a complaint at:

**1-800-431-9994**

You may also write to:

GENERAL STAR NATIONAL INSURANCE COMPANY
P.O. BOX 10360
STAMFORD, CONNECTICUT 06904–2354

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or GENERAL STAR NATIONAL INSURANCE COMPANY.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

©Copyright 2017, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.



## REAL ESTATE ERRORS AND OMISSIONS RENEWAL APPLICATION



**General Star National Insurance Company**

*Beyond Security*

*Please complete this application answering all questions. An incomplete application cannot be processed. Completion of this application neither binds coverage nor guarantees that a policy will be issued. To use this form, you may mouse click on or select a field and move between fields using the tab key.*

**INSTRUCTIONS TO THE APPLICANT:**
- The application must be signed and dated by an owner or officer of the applicant.
- **This application is for all States except Alaska, California, Louisiana, New York, or West Virginia.**
- If more space is required to answer a question, please attach a separate sheet or continue on letterhead.

### I.  GENERAL INFORMATION

| | |
|---|---|
| 1. | Name of Applicant: (Please include the complete name of any agency, firm, franchisee operation or DBA's under which you operate): MDLV, LLC DBA One Sotheby's International Realty |
| 2. | Has there been any change in name, address, ownership or operation within the past year or do you anticipate such changes within the next year?  If YES, please explain including the effective date. Corporate Address change effective 10/1/20    ● Yes    ○ No |

### II.   STAFF, OPERATIONS, AND RISK MANAGEMENT

| | |
|---|---|
| 1. | Indicate the total number of Staff: a. Full-time* Professionals: 82    b. Part-time Professionals: 2    c. Inactive Professionals: *Full-time is defined as earning more than $20,000 in annual commissions or fees. |
| 2. | Has any member of the applicant performed professional services for any other business in which they hold an ownership or managerial interest? |
| 3. | Did/will any client or project represent more than 25% of your gross annual revenue (past or projected 12 months)? If YES, please provide an explanation: |
| 4. | What percentage of transactions, over the past year, involved the applicant representing both the buyer and seller in a single transaction (in some states referred to as Dual Agency)?    ▮ % |
| 5. | Does the applicant, or any agent, have any exclusive listing agreements or exclusive leasing agreements with any builder/developer?* |
| 6. | Is any member of the applicant involved in any of the following real estate activities: |
| | a.   General Contractor |
| | b.   Construction Manager |
| | c.   Builder/Real Estate Developer* |
| | d.   Property Rehab or Renovations* |
| | e.   Formation or Management of Group Investments, Syndications, REITs, Trusts, or Partnerships |
| 7. | Please provide the **percentage** for each of the following questions: |
| | a.   Staff members who hold either a broker's license or other Professional Designations (e.g., CCIM,GRI, CRS, MAI, SRA)    % |
| | b.   Licensees who have completed a risk reduction seminar    % |
| | c.   Licensees who have completed formal continuing education courses    % |
| | d.   Transactions included an offer to obtain a home warranty    % |
| | e.   Transactions included a home inspection on the property    % |

### III.  CLAIMS INFORMATION

| | |
|---|---|
| | *ANSWER THE FOLLOWING QUESTIONS ONLY AFTER INQUIRING OF EACH OWNER, OFFICER, MEMBER, EMPLOYEE, AND INDEPENDENT CONTRACTOR.* |
| 1. | Has any of the above reference persons or the applicant been subject to a felony conviction, license surrender or been subject to any investigation, license revocation, suspension or other disciplinary action by any licensing board, real estate association, or other regulatory body within the past year? |
| 2. | After inquiring, have any claims been made against the applicant or any of the aforementioned persons within the past year? |
| 3. | After inquiring, **are** any of the aforementioned persons aware of any act, omission, personal injury, fact, circumstance, situation, or incident, which could be a basis for a claim? |

**PLEASE NOTE:**  Failure to report to your current insurance company any claim made against you during your current policy term, or facts, circumstances or events, which could give rise to a claim against you BEFORE the expiration of your current policy term, may jeopardize your coverage.  This policy will not apply to any claim which any person proposed for this insurance knew of prior to the effective date of the policy or an act, error, or omission, which could be the basis of a claim.

| IV.   GROSS REVENUE and AREAS OF PRACTICE | | | |
|---|---|---|---|

1. **Please complete the following grid providing the applicant's gross revenue from all services offered.  If newly established, please provide projections.  Gross revenue is defined as all commissions and fees, before expenses or any splits with agents or appraisers.**

| Areas of Practice | Past 12 Months | |
|---|---|---|
| **RESIDENTIAL** | **Number of Transactions or Appraisals** | **Gross Income** |
| Residential Property Sales (1-4 Units) | | |
| Residential Raw Land | | |
| Leasing - Residential (Property not managed) | | |
| Property Management - Residential | | |
| Agent Owned Property Transactions | | |
| **COMMERCIAL** | | |
| Commercial Property | | |
| Commercial Raw Land | | |
| Leasing – Commercial (Property not managed) | | |
| Property Management – Commercial | | |
| Business Brokerage/Sale of Business Opportunities* | | |
| Farm/Ranch/Vineyards (income producing) | | |
| Industrial Property Sales or Leasing | | |
| Agent Owned Property Transactions | | |
| **MISCELLANEOUS BROKERAGE SERVICES** | | |
| Auctioneering (Real Property) | | |
| Broker Price Opinions (BPOs) | | |
| Condo/Homeowners Association Management* | | |
| Escrow Agent (short-term for your real estate clients) | | |
| Mortgage Brokerage | | |
| Real Estate Consulting (Describe): | | |
| Referral Fees | | |
| Other (Describe): | | |
| **APPRAISAL SERVICES** | | |
| Residential Appraisals | | |
| Residential Appraisal Reviews | | |
| Residential Desktop Appraisals | | |
| Commercial/Industrial Appraisals* | | |
| Appraisal of Blueprints or Construction Draws* | | |
| Appraisals involving multiple properties, condominium conversions, new construction/development projects* | | |
| Conservation, Right-of-Way or Public Sector Appraisals* | | |
| Other*(Describe) | | |
| **TOTALS:** | | |

*Supplemental Application Required

2. **PROPERTY MANAGMENT:**  Please answer the following questions for property management services offered.        ⚪  N/A

Number of Units Managed:

Does the applicant require proof that there is liability insurance in place for each property managed?

**NOTICE:** General Star National Insurance Company is an "admitted" or "licensed" insurer in all states, subject to the financial solvency regulation and enforcement, which applies to licensed companies.  This insurance company participates in state insurance guarantee funds.

| V.   ACKNOWLEDGEMENTS, NOTICES, AUTHORIZATION, and SIGNATURE |
|---|

**FRAUD WARNINGS**

**Notice to Applicants of all states except Colorado, Florida, Kentucky, New Jersey, New Mexico, Oklahoma, Oregon, Pennsylvania, Virginia, Washington and D.C.:**  Any person who knowingly, and with the intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties and denial of insurance benefits.

**Colorado Notice:**  Any person who knowingly, and with the intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties and denial of insurance benefits.  Any insurance company or insurance agent who knowingly provides false, incomplete or misleading information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance.

**Notice to Florida Applicants:**  Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**Notice to Kentucky Applicants:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Notice to New Jersey Applicants:**  Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Notice to New Mexico Applicants:**  Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**Notice to Oklahoma Applicants:  Warning:**  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Notice to Oregon Applicants:**  Any person who knowingly and with intent to defraud or deceive any insurance company or other person who files an application for insurance or a statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto upon which the insurance company or any other person relies may be a crime and may provide grounds for criminal or civil penalties.

**Notice to Pennsylvania Applicants:**  Any person who knowingly and with intent to defraud any insurance company or other person who, files an application for insurance or a statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Notice to Virginia Applicants:**  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

**Notice to Washington and Washington D.C. Applicants:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

**I declare that the information provided in this application is true and accurate to the best of my knowledge, I have not withheld or misrepresented any material facts, and I will notify the company if the information on this application changes between the date of this application and the effective date of any insurance provided.  I agree that completion of this application does not bind the company to issue a policy or bind the applicant to purchase the insurance.  I further agree that this application shall be the basis of the contract and will attach to the policy of insurance should a policy be issued.**

*Please note that the application must be signed and dated by an owner or officer of the applicant.*

| Mayur Raichura | 11/17/2020 |
|---|---|
| Signature of Applicant | Date |
| Mayur Raichura, CFO | |
| Print or Type Name and Title | |

*For Florida Agents Only:*
Insurance Agent or Producer's Name:  **Luis Gazitua**       License Number:   **P024508**

*For Iowa and New Hampshire Agents Only:*

Insurance Agent or Producer's Name:

Insurance Agent or Producer's Signature: