UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-24284-CIV-MORENO/GOODMAN

GENERAL STAR NATIONAL
INSURANCE COMPANY,

      Plaintiff,

v.

MDLV, LLC d/b/a ONE SOTHEBY'S
INTERNATIONAL REALTY, et al.,

      Defendants.

_____/

**AMENDED REPORT AND RECOMMENDATIONS ON DEFENDANT ONE
SOTHEBY'S' MOTION FOR JUDGMENT ON THE PLEADINGS**

In this declaratory judgment case, Defendant One Sotheby's International Realty

("One Sotheby's") filed a Federal Rule of Civil Procedure 12(c) Motion for Judgment on

the Pleadings. [ECF No. 74]. Plaintiff General Star National Insurance Company

("General Star" or "Plaintiff") filed a response [ECF No. 79] and One Sotheby's filed a

reply [ECF No. 80].

Senior United States District Judge Federico A. Moreno referred to the

Undersigned all pretrial proceedings for an Order on non-dispositive motions and for a

Report and Recommendations on dispositive motions. [ECF No. 14].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **grant** One Sotheby's' motion for judgment on the pleadings.

## I.     Background

General Star issued to One Sotheby's a Real Estate Errors and Omissions Liability Insurance Policy (the "Policy"). [ECF No. 47, ¶ 9]. While the Policy was in effect, One Sotheby's received a demand letter from Heliac, Inc. ("Heliac"), seeking the recovery of funds allegedly and unlawfully converted by Gleb Klioner, a One Sotheby's real estate associate, from Heliac following the sale of its property at 9701 Collins Avenue, Unit 502S, Bal Harbour, Florida (the "Property"). *Id.* at ¶ 15.

General Star received notice of the demand letter and agreed to provide a defense to One Sotheby's, pursuant to the terms of the Policy and subject to a reservation of rights. *Id.* at ¶¶ 19; 22. After an unsuccessful mediation, Heliac formally filed suit against One Sotheby's, Klioner and Citibank, N.A. in Miami-Dade County state civil court (the "Underlying Lawsuit"). [ECF Nos. 47, ¶ 24; 47-1]. General Star filed this lawsuit for declaratory judgment relief against One Sotheby's and Heliac. [ECF No. 1]. General Star's First and Second Amended Complaint (the current version of the complaint) adds Klioner as a defendant.

Following the denial of its motion to dismiss [ECF No. 50], One Sotheby's filed an Answer and Affirmative Defenses [ECF No. 57], which is the subject of a pending motion

to strike [ECF No. 70].[1] Although its Answer and Affirmative Defenses is still subject to challenge, One Sotheby's filed the instant motion, which contends that judgment on the pleadings is appropriate because certain claims in the Underlying Lawsuit fall outside the Policy's exclusionary provisions and that General Star therefore has a duty to defend the entire lawsuit. [ECF No. 74].

## II.      Legal Standard

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate only "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). The Court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*

"When a defendant moves for judgment on the pleadings pursuant to Rule 12(c), the motion 'is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted' under Rule 12(b)(6)." *Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020), aff'd, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (quoting *Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1349 (S.D. Fla. 2013).

---

[1]      The Undersigned issued a Report and Recommendations on this motion, recommending that the motion be denied. [ECF No. 85].

III.     **Analysis**

"The interpretation of provisions in an insurance contract is a question of law."

*Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014). In Florida, the court

looks to the "eight corners" -- i.e., the four corners of the insurance policy and the four

corners of the underlying complaint -- to determine whether the insurance policy's

coverage or exclusionary provisions apply. *Travelers Indem. Co. of Connecticut v. Richard*

*Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021) ("We determine whether an

insurer has a duty to defend its insured based on only the eight corners of the complaint

and the policy." (internal quotations omitted)).

Because the duty to defend is a broad one, "[t]he merits of the underlying suit are

irrelevant." *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 181 (Fla. 4th DCA

2015). An insurer has a duty to defend when the "fairly read" allegations in the

underlying complaint bring the matter within the coverage of the insured's policy. *Fun*

*Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. 3d DCA 1995). The insurer

must defend the entire suit even "where a complaint alleges facts that are partially within

and partially outside the coverage of an insured's policy." *Sunshine Birds & Supplies, Inc.*

*v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997).

"However, if the pleadings show the applicability of a policy exclusion, [then] the

insurer has no duty to defend." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla.

4th DCA 2003). The mere existence of "buzz words" or artful pleading will not create a

duty to defend, *see Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000); the allegations within the complaint must seek recovery for a matter not prohibited by a policy exclusion, *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1306–07 (Fla. 1st DCA 1992).

"Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage." *Borges v. Citizens Prop. Ins. Corp.*, No. 3D21-0216, 2022 WL 4587418, at *1 (Fla. 3d DCA Sept. 30, 2022). To meet this burden, the insurer must "demonstrat[e] that the allegations of the complaint are cast solely and entirely within the policy exclusion and are **subject to no other reasonable interpretation**." *Deshazior v. Safepoint Ins. Co.*, 305 So. 3d 752, 755 (Fla. 3d DCA 2020) (emphasis added).

General Star raises procedural and merits-based arguments in opposition to One Sotheby's' motion.

In its procedural challenge, General Star argues that One Sotheby's' motion should be denied because it is premature. General Star notes that One Sotheby's' Answer is still the subject of a pending motion to strike. [ECF Nos. 57; 70]. Because the motion to strike is still pending, General Star says that the pleadings are not "closed," as is required by Rule 12(c). [ECF No. 79]. One Sotheby's argues in its reply that it had to file the instant motion to timely comply with the dispositive motions deadline and that the disposition of General Star's motion to strike will have no impact on this motion because the Court

need look to only the eight corners of the Policy and the Underlying Lawsuit. [ECF No. 80].

The Undersigned has recommended that General Star's Motion to Strike be denied. [ECF No. 85]. If that recommendation is adopted[2], then One Sotheby's' Answer will be final, and this procedural argument will be mooted. If the Report and Recommendations is not adopted, then One Sotheby's will likely file a new Answer and then refile the exact same motion (or seek leave to file one after the motions deadline expired). In either circumstance, the Undersigned will presumably be required to tackle the merits of One Sotheby's' motion. Accordingly, the Undersigned rejects General Star's procedural arguments and elects to address the merits of the parties' positions.

General Star's Second Amended Complaint contains four counts for declaratory judgment: (1) Declaration that Coverage is Precluded for Klioner by Operation of Exclusion A(1) of the Policy; (2) Declaration that Coverage is Precluded by Operation of Exclusion A(2) of the Policy; (3) Declaration that Coverage is Precluded by Operation of Exclusion A(16) of the Policy; and (4) Declaratory Judgment that One Sotheby's Must Reimburse Damages and Claims Expenses. [ECF No. 47]. Because Count I concerns only Klioner, who has not joined One Sotheby's' motion, the Undersigned will not discuss it any further.

---

[2]     General Star has not filed any objections to the Report and Recommendations and the time to do so has passed.

In Count II of the Second Amended Complaint, General Star alleges that it has no duty to defend One Sotheby's in the Underlying Lawsuit based on Exclusion A(2), which provides, in relevant part:

The Company has no obligation under this Policy to pay Damages or Claims Expenses or to provide a defense, in connection with any Claim(s):

B. Under any part of this Policy if based on or arising out of the following: . . .

2. Any disputes involving any Insured's fees, commissions or charges, the failure to pay or collect premium, escrow or tax money, or the **conversion, misappropriation, commingling or embezzlement of funds** or other property. However, in the event a Claim is made against an Insured seeking both the return of escrow money and alleging an act, error, omission or Personal Injury in the performance of Professional Services covered under this Policy, the Company will defend such Claim without any obligation to reimburse the Insured for the payment of monies held as escrow.

[ECF No. 47, ¶ 35] (emphasis supplied) (the "Conversion Exclusion").

In Count III of the Second Amended Complaint, General Star alleges that it has no duty to defend One Sotheby's in the Underlying Lawsuit based on Exclusion A(16), which provides, in relevant part:

The Company has no obligation under this Policy to pay Damages or Claims Expenses or to provide a defense, in connection with any Claim(s):

A. Under any part of this Policy if based on or arising out of the following: . . .

16. Any **guarantee or promise of future status, performance or valuation** in the course of performing Professional Services by the Insured.

*Id.* at ¶ 41 (emphasis added) (the "Future Value Exclusion").

Count IV seeks reimbursement for any damages and claims expenses paid, including reimbursement of all costs and fees incurred by General Star to defend One Sotheby's in the Underlying Lawsuit, under General Star's reservation of rights.

One Sotheby's says that "General Star cannot show with certainty that coverage does not exist for the Underlying Lawsuit." [ECF No. 74]. In One Sotheby's' view, "some allegations fall, at least *partially* or *potentially,* within the Policy's coverage" and, therefore, General Star has a duty to defend. *Id.* (emphasis supplied). As support for its argument, One Sotheby's points to Counts I and III of the Underlying Lawsuit[3] as counts which fall outside the Exclusionary Provisions identified in the Second Amended Complaint.

Count I of the Underlying Lawsuit accuses One Sotheby's of Negligent Misrepresentation. It incorporates all of the factual allegations of the first 50 paragraphs of the Underlying Lawsuit. By way of summary, Count I alleges that One Sotheby's, through Klioner, negligently misrepresented the state of the Miami real estate market, the American economy, and the procedures through which a closing could occur. [ECF

---

[3]     The Underlying Lawsuit contains nine total counts: (1) Negligent Misrepresentation against One Sotheby's; (2) Negligent Employee Hiring against One Sotheby's; (3) Negligent Employee Training against One Sotheby's; (4) Vicarious Liability for Conversion against One Sotheby's; (5) Breach of Duties in Violation of 475.25(1)(b), Florida Statutes against One Sotheby's; (6) Conversion against Klioner; (7) Breach of Duties in Violation of 475.25(1)(b), Florida Statutes against Klioner; (8) Failure to Deliver Funds against Klioner; (9) Civil Theft against Klioner. [ECF No. 47-1].

No. 47-1, ¶¶ 52-54]. Count I further states that "because of [Klioner's] negligent misrepresentations and poor advice, Heliac incurred damages in the form of the difference between the market price of the St. Regis Condo and its sale price, and the loss of the St. Regis Condo sale proceeds." *Id.* at ¶ 64.

Count III of the Underlying Lawsuit accuses One Sotheby's of Negligent Employee Training. As with Count I, Count III incorporates the first 50 paragraphs of the Underlying Lawsuit. The accusations are similar, but they are based on One Sotheby's' purported failure to properly train Klioner, which lead to Klioner misrepresenting to Heliac the state of the Miami real estate market, the American economy, and the procedures by which a closing could occur. *Id.* at ¶ 74. Because of this failure to train, "Heliac was damaged to the extent of the difference between the market price of the St. Regis Condo and its sale price, and the loss of the St. Regis Condo sale proceeds." *Id.* at ¶ 78.

Both One Sotheby's' and General Star's arguments focus on rules of interpretation concerning breadth. One Sotheby's focuses on the breadth of an insurer's duty to defend when "the complaint alleges facts that fairly and potentially bring the suit within policy coverage." [ECF No. 74 (quoting *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148-49 (11th Cir. 2019). General Star, however, focuses on the breadth of its Exclusionary Provisions, specifically the meaning of the phrase "arising out of." As General Star notes, the Florida

Supreme Court has found the phrase "arising out of" to be unambiguous and worthy of

a broad interpretation:

> [W]e agree with the majority of states and conclude that the phrase "arising
> out of your product" in the products-completed operations hazard
> exclusions at issue is unambiguous. "The term 'arising out of' is broader in
> meaning than the term 'caused by' and means 'originating from,' 'having
> its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a
> connection with.'" [*Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla.
> 5th DCA 1996)]. As we implied in [*Race v. Nationwide Mut. Fire Ins. Co.*, 542
> So. 2d 347, 351 (Fla. 1989)], this requires more than a mere coincidence
> between the conduct (or, in this case, the product) and the injury. It requires
> "some causal connection, or relationship." [*Heritage Mut. Ins. Co. v. State
> Farm Mut. Auto. Ins. Co.*, 657 So. 2d 925, 927 (Fla. 1st DCA 1995)]. But it does
> not require proximate cause. *Race*, 542 So. 2d at 348.

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539–40 (Fla. 2005).

General Star contends that the following language from the Conversion Exclusion

brings both Count I and Count III within its gamut: "based on or arising out of . . . [a]ny

disputes involving any Insured's . . . conversion . . . of funds[.]" One Sotheby's counters

by arguing that the fact that both Count I and Count III include allegations of conversion

and seek damages for conversion is irrelevant because "[a] finding of damages in the

form of the difference between the market price and sale price of the property would be

independent of any findings of conversion of funds[,]" which means "[a]t the very least,

[the] allegations are partially within coverage."

General Star makes strong arguments in support of its contention that One

Sotheby's' motion should be denied based on the Conversion Exclusion. Indeed, the

Conversion Exclusion is written broadly. *See Admiral Ins. Co. v. Spira*, No.

10

608CV1772ORL22DAB, 2010 WL 11507122, at *5 (M.D. Fla. Mar. 31, 2010) ("[C]onclud[ing] that the Florida Supreme Court would give the words 'arising out of' in the Specific Services Exclusion the same meaning—if not broader, since the Specific Services Exclusion adds a participle, 'involving.'"); *see also Merriam Webster's Collegiate Dictionary 660* (11th ed. 2005) (defining "involve" as, inter alia, "to relate closely: connect," "to have within or as part of itself: include" (capitalization altered)).

However, the allegations of the Underlying Lawsuit -- "fairly read," *Fun Spree Vacations, Inc.*, 659 So. 2d at 422 -- do not definitively confirm that Klioner's statements about the Miami real estate market and the imminent collapse of the U.S. economy were made with the goal of forcing a quick sale so that he could convert the millions of dollars in proceeds. It is just as plausible, based on a fair reading of the Underlying Complaint, that Klioner did not decide to convert the funds until *after* the sale had occurred. And, if Klioner did not decide to convert the funds until after the sale, then the preceding actions -- and the damages caused by the market differences -- could not have *arisen from* the conversion.

The mere fact that two harms may arise from the same underlying facts does not mean that the two harms arise from each other. For example, if a homeowner's insurance contract included an exclusion for damage arising out of a flood, then it would not require an insurer to reimburse the homeowner for damage caused by a flood created by the heavy rain of a hurricane. If, however, that same hurricane also caused a tree to fall onto

the home, which damaged the roof, then the fact that the home also suffered flood damage (created by the same hurricane which caused the tree to fall) would not allow the insurer to deny coverage based on the flood exclusion. Similarly, here, the difference between the market price and sale price (which is one category of claimed loss) does not arise from the conversion even though -- like the flood and the fallen tree -- the two harms may share a similar origin. It would be illogical to assume that the market loss *arose* from a conversion which did not occur until *after* the market loss was generated.

The insurer's duty to defend arises solely from "the facts and legal theories alleged in the pleadings and claims against the insured." *Stephens v. Mid–Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (internal quotations omitted). "If the allegations of the complaint leave **any doubt** as to the duty to defend, the question must be resolved in favor of the insured." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (emphasis added). Here, there is doubt over Klioner's motivations created by the Underlying Lawsuit's failure to allege specific causal connections. Indeed, the single link made by the Underlying Lawsuit is that "[One Sotheby's] and Klioner, as its sales associate, intended and expected Heliac to rely on Klioner's misrepresentations to induce Heliac to sell the St. Regis Condo and, consequently, collect a commission from the sale of the St. Regis Condo as soon as possible." [ECF No. 47-1, ¶ 60]. In other words, the Underlying Lawsuit does not allege a plan to *convert* the sale proceeds by misrepresenting the real estate market and pressuring

Heliac to sell. Instead, the alleged plan was merely to earn a commission from the sale of the Property.

As the case progresses, the facts in discovery may reveal that the purpose behind Klioner's alleged merciless pressure was to force a sale so that he could convert the funds. However, this is a connection which the Underlying Complaint does not specifically make. Instead, the Underlying Lawsuit merely lays out a timeline of events which begins with Klioner's statements about the economy and the value of the property and ends with Klioner's conversion, following a sale at a below-market price.

At bottom, General Star is unable to meet its burden to establish that *all* fair readings of the Underlying Lawsuit fall within the Conversion Exclusion.

General Star's next proffered exclusion is the Future Value Exclusion. One Sotheby's argues that the Future Value Exclusion does not apply because "[t]he Underlying Lawsuit does not allege One Sotheby's made guarantees or promises to Heliac regarding the future value of its property." [ECF No. 74].[4] In One Sotheby's' view,

---

[4]      In its Reply, One Sotheby's raises for the first time the argument that a distinction should be made between the actions of Klioner and One Sotheby's because the Future Value Exclusion applies to only "<u>the</u> Insured." [ECF No. 80 (emphasis in original)]. In the Eleventh Circuit, courts do not consider arguments raised for the first time in a reply brief. *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court." (citation omitted)); *see also United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002) (Court need not address issue raised for first time in reply brief), cert. denied, 539 U.S. 951, 123 S. Ct. 2628, 156 L.Ed.2d 643 (2003); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in reply brief waived); *United States v. Martinez*, 83 F.3d 371, 377 n.6

the Underlying Lawsuit instead alleges that "Klioner misunderstood and misrepresented the state of South Florida's real estate market, [and] as a result[,] misrepresented that the value of Heliac's property would suffer an imminent drop in value, and advised Heliac to sell the property for what Heliac alleges was below-market price." *Id.* (citing [ECF No. 47-1, ¶¶ 52-53]).

General Star contends that these statements were not "hazy suggestions," as One Sotheby's characterizes them. Instead, in General Star's view, these statements "represented an unqualified assertion that something would definitely happen in the future." [ECF No. 79]. General Star says that the Underlying Lawsuit accuses Klioner of "'mercilessly' pressur[ing] Heliac to sell the [Property] 'urgently, or it would lose money due to its inability to sell the [P]roperty' because the real estate Miami real estate [sic] market 'was on the verge of crashing[,]' and a 60-70% drop in value of the [Property] 'was imminent[.]'" *Id.* (quoting [ECF No. 47-1, ¶¶ 26, 31]) (emphasis removed; some alterations in original).

"When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." *Deutsch v. Geico Gen. Ins. Co.*, 284 So. 3d 1074, 1076 (Fla. 4th DCA 2019) (citing *Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015)).

_____

(11th Cir. 1996) (declining to consider arguments raised for the first time in a reply brief). Therefore, the Undersigned will not consider this argument.

14

The Future Value Exclusion contains the following relevant language: "based on or arising out of . . . [a]ny guarantee or promise of future status, performance or valuation in the course of performing Professional Services by the Insured." Because the parties' disagreement appears to concern only whether Klioner made a "promise" or "guarantee," the Undersigned will look to the dictionary definitions of those terms.

The Undersigned will use the Merriam-Webster Dictionary, as the Eleventh Circuit has repeatedly relied upon it for the meaning of words and phrases. *See In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) (citing to Merriam-Webster for the definition of the word "maintain"); *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla.*, 46 F.4th 1268, 1275 (11th Cir. 2022) (citing to Merriam-Webster for the definitions of the phrases "to exclude," "to make," and "to deny").

According to Merriam-Webster's Online Dictionary, "promise" means a "legally binding declaration that gives the person to whom it is made a right to expect or to claim the performance or forbearance of a specified act"; "reason to expect something;" "to pledge to do, bring about, or provide"; "warrant, assure"; or "to give ground for expectation." "Promise," MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www. merriam-webster.com/dictionary/promise (last visited Dec. 27, 2022). Likewise, guarantee means "an assurance for the fulfillment of a condition" or "to assert confidently." "Guarantee," MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www. merriam-webster.com/dictionary/guarantee (last visited Dec. 27, 2022).

General Star's view on the conviction and certainty the Underlying Lawsuit ascribes to Klioner's representations is not an unreasonable one. However, the fact that General Star's view is reasonable does not mean that the exclusion applies.

"[I]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x 867, 868 (11th Cir. 2006) (citing *Demshar v. AAACon Auto Transp., Inc.*, 337 So. 2d 963, 965 (Fla. 1976)). In the same vein, policies "are to be construed most strongly against the insurer and liberally in favor of the insured." *Id.* (citing *Hartnett v. Southern Ins. Co.*, 181 So. 2d 524, 528 (Fla. 1965)). Accordingly, exclusionary clauses restricting the insured's coverage are generally disfavored, *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006), and apply only when the insurer "demonstrat[es] that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001).

Here, One Sotheby's' interpretation is *also* reasonable. Under this perspective, Klioner was not speaking about discernable **facts,** such as the characteristics of other homes (e.g., square footage, number of bedrooms, view of the ocean, etc.) and the actual sale prices for those homes. Rather, he was speaking about speculative future economic events. No person is able to fully and definitively predict whether the U.S. economy will either improve or worsen in the upcoming weeks or months. Nor does the Underlying

16

Lawsuit contain language which unequivocally transform these opinion-type statements into promises or guarantees.

General Star shoulders the burden to establish that an exclusion to coverage applies. *IDC Const., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004) ("When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations in the complaint are cast solely and entirely within the policy exclusions and are subject to no other reasonable interpretation."). The interpretation of the Underlying Lawsuit One Sotheby's advances -- that Klioner's alleged misrepresentations were errors in advice, not "guarantees" or "promises" -- is reasonable.

As with the Conversion Exclusion, the facts established in discovery may reveal that Klioner did actually make "promises" or "guarantees," but the facts contained in the Underlying Lawsuit do not make clear that Klioner made any "promises" or "guarantees." Accordingly, the Future Value Exclusion does not absolve General Star of its duty to defend.

Finally, One Sotheby's reraises its argument from its motion to dismiss that the issue of General Star's duty to indemnify is premature and the Court should "dismiss the General Star's [sic] request for a declaration on their duty to indemnify." The general rule is that the duty to indemnify [] is not ripe for adjudication until the underlying lawsuit is resolved. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019). General Star's only argument in response is that the exception

to the general rule applies -- i.e., that General Star has no duty to defend and, therefore, has no duty to indemnify.

The Undersigned, however, has determined that One Sotheby's is entitled to judgment on the pleadings because the Underlying Lawsuit does not fall within either the Conversion or Future Value Exclusions. Thus, because General Star has not established that it has no duty to defend, then its request for a declaratory judgment on the duty to indemnify is premature, as the Underlying Lawsuit has not yet been resolved.

**IV.    Conclusion**

Because counts one and three of the Underlying Lawsuit contain allegations which fall outside of the Conversion Exclusion or Future Value Exclusion, the Undersigned **respectfully recommends** that the District Court **grant** One Sotheby's' motion for judgment on the pleadings and against General Star on Counts II and III. Further, the Undersigned **respectfully recommends** that the District Court **dismiss** Count IV as premature.

**V.    Objections**

The parties will have seven (7) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the

other party's objection within seven (7) days of the objection.[5] Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on January 5, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record

---

[5]     The Undersigned has shortened the deadlines for filing Objections and Responses because the issue is amply briefed and because the calendar call and trial are approaching.