UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:21-cv-24284-MORENO/GOODMAN

GENERAL STAR NATIONAL
INSURANCE COMPANY,

     *Plaintiff,*

v.

MDLV, LLC d/b/a ONE SOTHEBY'S
INTERNATIONAL REALTY;
HELIAC, INC.; and GLEB KLIONER,

     *Defendants.*

_____/

**REPORT AND RECOMMENDATIONS ON
ONE SOTHEBY'S RENEWED MOTION FOR ATTORNEY'S FEES**

Plaintiff General Star National Insurance Company ("General Star" or "Plaintiff")

brought this action against its client, MDLV LLC d/b/a One Sotheby's International Realty

("One Sotheby's" or "Defendant"[1]), seeking a Declaratory Judgment "to declare the

rights and obligations between the parties under the [insurance policy]." [ECF No. 47, ¶

10]. One Sotheby's moved for a Judgment on the Pleadings [ECF No. 74] which Senior

---

[1]      This case also involves Defendants Heliac, Inc., and Gleb Klioner. However, even though there are multiple defendants, the motion at issue involves only Defendant One Sotheby's. Defendant Klioner has been absent throughout the course of this litigation and had a default judgment entered against him. [ECF No. 109]. Defendant Heliac, Inc., while active in this litigation, was not involved in the dispute related to this motion.

United States District Judge Federico A. Moreno granted. [ECF No. 111]. General Star

appealed that judgment to the Eleventh Circuit Court of Appeals, which affirmed Judge

Moreno's ruling. [ECF Nos. 113; 122].

One Sotheby's subsequently filed its Renewed Motion for Attorney's Fees [ECF

No. 124 ("Motion")].[2] Judge Moreno referred Defendant's Motion to the Undersigned "to

submit a Report and Recommendations" pursuant to "28 U.S.C. § 636(b)(1)(a) and (B) and

the Magistrate Rules of the [Southern District of Florida Local Rules.] " [ECF No. 129].

For the reasons stated below, the Undersigned **respectfully recommends** that the

District Court **grant in part** One Sotheby's Motion (which seeks $191,995.00 in fees) and

award it **$103,350.00** in attorney's fees.

I.   BACKGROUND

The Eleventh Circuit summarized the factual and procedural background of this

case as follows:

> This duty-to-defend action arises from an underlying lawsuit involving a
> real-estate transaction. Heliac, Inc., a real-estate holding company, owned
> a condominium property in South Florida. It enlisted [One Sotheby's] and
> its agent Gleb Klioner to help it sell the property. Heliac sued One Sotheby's
> and Klioner. It alleged that Klioner made misrepresentations to induce
> Heliac to sell its property so Klioner could earn a commission and that he
> later converted the sale proceeds for his own use.

---

[2]   Initially, Defendant filed its motion requesting attorney's fees together with a
motion requesting a stay after Plaintiff filed its notice of appeal. [ECF Nos. 116; 117]. The
Undersigned granted the motion requesting a stay, and Judge Moreno denied
Defendant's initial request for fees "with leave to refile after the Court of Appeals issues
a mandate in this case." [ECF Nos. 118; 121].

*Gen. Star Nat'l Ins. Co. v. MDLV LLC*, No. 23-11064, 2024 WL 700425, at *1 (11th Cir. Feb.

21, 2024).

> Due to this alleged breach, Heliac suffered market-value damages. *Id.*
> General Star initially denied coverage for the Heliac lawsuit. But later, it
> agreed to defend One Sotheby's under a reservation of rights. After that
> agreement, General Star filed this coverage action seeking a declaration
> that it owed no duty to defend or indemnify One Sotheby's in the Heliac
> litigation.
>
> ***
>
> The district court later entered final judgment, declaring that General Star
> had a duty to defend One Sotheby's in the Heliac lawsuit for claims against
> One Sotheby's.

*Id.* at *4.

After the Eleventh Circuit denied General Star's appeal, it transferred the issue of

Defendant's entitlement "to [a reasonable amount of] appellate attorney's fees" to the

district court. [ECF No. 125]. Defendant's Motion therefore requests fees related to

litigating in front of both the district and appellate courts.

## II.   ANALYSIS

One Sotheby's seeks a total of $191,995.00 in attorney's fees pursuant to Fed. R.

Civ. P. 54, S.D. Fla. L.R. 7.3, and Fla. Stat. § 627.428. This amount represents fees incurred

for both the underlying case ($135,876.00) and the appeal ($56,119.00).

At the outset, the Undersigned notes that the Motion [ECF No. 124] does not reflect

the same amount Defendant sought in its initial motion for attorney's fees [ECF No. 116],

which was $81,591.00.[3] Most notably, the hourly rates for Defendant's legal team, Ver Ploeg & Marino, P.A. ("VPM"), in this renewed motion differ from the earlier-used rates. [ECF No. 124]. Additionally, this Motion fails to strictly comply with Local Rule 7.3 because Defendant did not include or attach the original August 2021 Retainer Agreement [ECF No. 132-1 ("Retention" or "agreement")] between it and its legal counsel in the Motion.

Nonetheless, the Court will exercise its discretion and consider the merits of One Sotheby's motion. *See Carnival Corp. v. McCall*, No. 18-24588CIV, 2021 WL 2338647, at *4 (S.D. Fla. Apr. 26, 2021), *report and recommendation adopted*, No. 18-CV-24588, 2021 WL 2333102 (S.D. Fla. June 8, 2021) ("[T]he Court has discretion in applying the Local Rules." (citing *Maale v. Kirchgessner*, No. 08-80131-CIV, 2011 WL 1549058, at *5 (S.D. Fla. Apr. 22, 2011)).

### a. Attorney's Fees

#### i. Entitlement to Attorney's Fees

The party seeking attorney's fees bears the burden of establishing entitlement. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and

---

[3]     Defendant's initial motion for fees did not include fees related to the appeal. After the Eleventh Circuit ruled in its favor [ECF No. 122], Defendant amended its initial request and filed the Motion at issue here. Compared to its initial request related to fees, Defendant seeks $54,284.50 more in fees for the underlying case alone.

documenting the appropriate hours and hourly rates." (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). Where, as here, the Court's jurisdiction is based on diversity of citizenship, state law governs a party's entitlement to attorney's fees. *See Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, Inc.*, 270 F. App'x 962, 963 (11th Cir. 2008) (noting that the Eleventh Circuit has "consistently recognized that in diversity cases a party's right to attorney's fees is determined by reference to state law").

"Florida courts follow the 'American Rule' that attorney's fees may only be awarded pursuant to an entitling statute or agreement among the parties." *Am. Family Mut. Ins. Co. v. Alvis*, 72 So. 3d 314, 317 (Fla. 2d DCA 2011) (citing *Dade Cnty v. Pena*, 664 So. 2d 959, 960 (Fla. 1995)).

Defendant states it is entitled to attorney's fees under Fla. Stat. § 627.428.[4] Pursuant to § 627.428(1), Florida Statutes:

> [U]pon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or degree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat. § 627.428(1) (2023).

---

[4]      Section 627.428 was repealed effective March 2023. However, **cases filed before the March 2023 effective date are not affected by this repeal.** *See* Ch. 2023-15, § 30, Laws of Fla. ("Except as otherwise expressly provided in this act, this act shall apply to causes of action filed after the effective date of this act."). Plaintiff filed its Complaint in December 2021.

"Attorney's fees are 'mandatory' for parties who fall within section 627.428(1)."

*Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *20 (11th Cir. Aug.

30, 2023) (citing *Citizens Prop. Ins. Corp. v. Bascuas*, 178 So. 3d 902, 904 (Fla. 3d DCA 2015)

(quoting *Ramirez v. United Auto. Ins. Co.*, 67 So. 3d 1174, 1175 (Fla. 3d DCA 2011))).

Here, General Star insured One Sotheby's at the time General Star filed this action.

Both parties agree that One Sotheby's is the prevailing party because One Sotheby's

prevailed on appeal. [ECF Nos. 122; 132, p. 4]. The Undersigned agrees and finds that

One Sotheby's is entitled to attorney's fees under Fla. Stat. § 627.428.

However, General Star contends that One Sotheby's Motion should be denied

because (1) it failed to adhere to the Local Rules; (2) "the hourly rates sought in the

Renewed Motion are excessive and unreasonable"; (3) One Sotheby's is not entitled to

fees related to litigating the *amount* of fees; and (4) "approximately 25% of the time entries

in the submitted timesheets are not compensable under Florida Law." [ECF No. 132, p. 3,

5].

### Failure to Adhere to the Local Rules

General Star first argues that One Sotheby's Motion failed to comply with Local

Rule 7.3(a)(4) because it did not include a copy of the Retention. [ECF No. 132, p. 5]. Local

Rule 7.3(a)(4) states that motions requesting an award of attorney's fees shall "disclose

the terms of any applicable fee agreement." S.D. Fla. L.R. 7.3(a)(4). In *its* response, Plaintiff

attached a copy of the applicable fee agreement between One Sotheby's and its law firm. [ECF No. 132-1].

Plaintiff suggests that Defendant may have *purposefully* omitted this Agreement due to the "astronomical and unjustified rate increase sought" in the Motion. [ECF No. 132, p. 5]. Plaintiff cites to *Lopez v. Scottsdale Ins. Co.*, a report and recommendations written by the Undersigned, arguing that the "court has discretion to deny a motion for attorney's fees based on the failure to comply with the Local Rules." *Id.* (citing No. 20-20112-CIV, 2022 WL 2119345, at *3 (S.D. Fla. May 26, 2022), *report and recommendation adopted*, No. 20-CV-20112, 2022 WL 2116561 (S.D. Fla. June 13, 2022)). However, as I stated in *Lopez*,

> Wholesale denial, however -- despite repeated failures – is **too harsh** of a remedy in this circumstance . . . **the documents' absence from the initial motion did not cause Defendant any prejudice or impact its ability to meaningfully respond.** Thus, the Undersigned will turn to the merits of the parties' positions.

*Lopez*, 2022 WL 2119345 at *3 (emphasis added). *See also W.P. Prods., Inc. v. Tramontina USA, Inc.*, No. 18-63162-CIV, 2020 WL 13604878, at *2 (S.D. Fla. Oct. 2, 2020) ("It is not mandatory that a court deny a costs and fees motion for non-compliance with Local Rule 7.3.").

Here, Plaintiff makes no mention of being prejudiced or how Defendant's omission impacted its ability to meaningfully respond. Plaintiff seemingly uses the omission as another reason why Defendant's Motion should be denied. Moreover, the fact that

Plaintiff *itself* attached a copy of the agreement works against any potential prejudice argument because how could Plaintiff be prejudiced by a document One Sotheby's neglected to file when it had that very document in its own possession? *See Kowalski v. Jackson Nat. Life Ins. Co.*, No. 12-60597-CIV, 2014 WL 4101567, at *3 (S.D. Fla. Aug. 20, 2014) (declining to deny the motion for fees and costs due to the alleged violation of Local Rule 7.3, especially where "the party seeking denial of the [m]otion has identified no prejudice suffered from the alleged local rules violation.").

In Defendant's reply, it contends that, in turn, Plaintiff's response should be stricken due to Plaintiff's own failure to comply with Local Rule 7.3(a) and 7.1(c). Local Rule 7.3(a) states, in relevant part, that if "a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rates for the matter and include any contingency, partial contingency, or other arrangements that could change the effective hourly rate." S.D. Fla. L.R. 7.3(a). Although General Star provided its legal counsel's hourly rates in its response [ECF No. 132, p. 23], it did *not* comply with the requirements of this Local Rule because the rates were not submitted in a sworn affidavit.

Additionally, One Sotheby's argues in its reply brief that because General Star's response totals twenty-three pages, it violates Local Rule 7.1(c). Rule 7.1(c) states, in relevant part, that "[a]bsent permission of the Court, neither a motion and its incorporated memorandum of law nor the opposing memorandum of law shall exceed twenty (20) pages." S.D. Fla. L.R. 7.1(c).

However, Defendant should not be throwing stones in glass houses because Federal Rule of Civil Procedure 7(b)(1) requires that requests for a court order be made by motion. Courts typically do not rule on requests embedded in a legal memorandum, as opposed to being raised in an *actual* motion. *Storm Damage Sols., LLC v. RLI Ins. Co.*, No. 23-CV-23681, 2023 WL 8004314, at *2 (S.D. Fla. Nov. 17, 2023); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for [affirmative relief] simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Cottingham v. Wal-Mart Stores E., LP*, No. 20-61991-CIV, 2020 WL 13357656 (S.D. Fla. Dec. 11, 2020) (refusing to consider a request to strike made in Defendant's reply because making such a request violates Local Rule 7.1(c), which requires a reply to be strictly limited to rebuttal of matters raised in the memorandum in opposition, and Federal Rule of Civil Procedure 7(b)(1), which requires a request for a court order to be made by motion).

Because One Sotheby's request to strike was not made by a separate motion and was instead imbedded within its reply, it is not considered properly raised. *See Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc.*, No. 5:17-CV-187-OC-34PRL, 2017 WL 9938032, at *1 (M.D. Fla. July 20, 2017) ("[A] request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion.").

For these reasons, the Undersigned will continue the analysis and not strike Plaintiff's response to Defendant's Motion nor recommend denial simply because of Defendant's failure to abide by the local rules.

### ii. Reasonableness of Fees

The Court must determine whether the requested amount of fees is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 434. This amount is typically referred to as the "lodestar." *Thornton v. Wolpoff & Abramson*, L.L.P., 312 F. App'x 161, 163–64 (11th Cir. 2008).

The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). This lodestar amount may then be adjusted upward or downward based upon other considerations. *Hensley*, 461 U.S. at 433–37. The moving party bears the burden of documenting the reasonableness of the hours expended and the hourly rate. *Barnes*, 168 F.3d at 427.

General Star contends that (1) the rates sought in the Motion are "unreasonable and excessive[;]" (2) Defendant is not entitled to fees related to litigating the *amount* of fees; and (3) approximately 25% of the time entries submitted in the time sheets are not compensable under Florida Law. [ECF No. 132, p. 3]. Regardless of a party's opposition (or lack of opposition), the Court must ensure that the fees it awards are reasonable. *See Valley* 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("[T]he Court has an **independent**

obligation to review fee motions and bills of costs to independently determine whether the hourly rates sought are reasonable, the number of attorney hours sought are reasonable, and that the costs sought to be taxed are properly taxable pursuant to the cost statute.") (emphasis supplied).

      **1.**    **Reasonable Hourly Rate**

In its Motion, One Sotheby's contends that the requested hourly rates are reasonable because of its legal team's experience, skills, reputation, and the prevailing market rate in South Florida. [ECF No. 124, p. 5].

General Star disputes Defendant's requested hourly rate and argues that "the maximum hourly rate for VPM's timekeepers is set by the August 2021 Retention." [ECF No. 132, p. 6]. On August 12, 2021, One Sotheby's and VPM entered into a retention agreement setting the rates as follow: partners would bill $575/hour, associates would bill at a uniform rate of $285, and paralegals would bill at $145. [ECF No. 132-1]. The initial motion for fees and costs was based on this Agreement, and Defendant requested $81,591.50 in fees for 250.70 hours performed in the underlying case. [ECF No. 116, p. 9]. Now, Defendant seeks $54,284.50 *more* in fees -- for about 29 more hours of work on the underlying case. Defendant included a chart in *each* of its motions requesting fees:

|  | Hours | Rate | Amount |
|---|---|---|---|
| **Attorneys:** | | | |
| Stephen A. Marino, Jr. | 39.80 | 575.00 | $22,885.00 |
| Alessia A. Rocha | 179.70 | 285.00 | $51,214.50 |
| Allie C. Watson | 21.20 | 285.00 | $6,042.00 |
| | | | |
| **Total for Attorneys:** | 240.70 | | $80,141.50 |
| | | | |
| **Paralegals:** | | | |
| Linda M. Mulhall | 9.20 | 145.00 | $1,334.00 |
| Monica C. Garcia | 0.80 | 145.00 | $116.00 |
| | | | |
| **Total for Paralegals:** | 10.00 | | $1,450.00 |
| | | | |
| **TOTAL FEES** | **250.70** | | **$81,591.50** |

|  | Hours | Rate | Amount |
|---|---|---|---|
| **Attorneys:** | | | |
| Stephen A. Marino, Jr. | 40.40 | 900.00 | $36,360.00 |
| Christine A. Gudaitis | 8.60 | 750.00 | $6,450.00 |
| Alessia A. Rocha | 196.80 | 425.00 | $83,640.00 |
| Allie C. Watson | 21.20 | 285.00 | $6,042.00 |
| | | | |
| **Total for Attorneys:** | 267 | | $135,537.00 |
| | | | |
| **Paralegals:** | | | |
| Linda M. Mulhall | 12.00 | 265.00 | $3,180.00 |
| Monica C. Garcia | 0.80 | 255.00 | $204.00 |
| | | | |
| **Total for Paralegals:** | 12.80 | | $3,384.00 |
| | | | |
| **TOTAL FEES** | | | **$135,876.00** |

[ECF Nos. 116, p. 9; 124, p. 10].

However, unlike with its initial request for fees, One Sotheby's failed to attach the Agreement to the Motion. General Star alleges that "given the astronomical and unjustified rate increase sought in the Renewed Motion relative to the rates agree to by

One Sotheby's in the Retention, this omission is disingenuous to say the least." [ECF No. 132, p. 5].

While the "presence of a pre-existing fee agreement may aid in determining reasonableness . . . [and] is helpful in demonstrating attorney's fee expectations when [the attorney] accepted the case," a private fee arrangement is but **a factor** in the calculation of a fee award. *Blanchard v. Bergon*, 489 U.S. 87, 93 (1989). A retention agreement is not, standing alone, dispositive. *See id*. A contractual fee agreement, like the Retention Agreement between One Sotheby's and VPM, should not limit "the district court judge, in his or her good judgment, [in] mak[ing] the assessment of what is a reasonable fee under the circumstances of the case." *Id*. at 96; s*ee also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc*., 253 F.3d 1332, 1337 (11th Cir. 2001) ("[A]n agreed-upon rate is relevant evidence to determine the fee rate, but it is not necessarily determinative" and does not "act as a cap or ceiling in determining the reasonable hourly rate."). Therefore, the Court has the discretion to adjust the specific hourly fees agreed to in the Retention.

Thus, the Undersigned must evaluate the reasonableness of counsel's hourly rate, regardless of the Retention. The Eleventh Circuit defines a "reasonable hourly rate" as "the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 895–96 n.11). "The applicant bears the burden of

producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* at 1302 (internal citation omitted).

In determining the prevailing market rate, the Court should consider several factors, including: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (discussing factors set out in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974)).

One Sotheby's requests the following hourly rates for its timekeepers, and provided explanations about their experience and qualifications pursuant to S.D. Fla. L.R. 7.3(a)(5)(A):[5]

1. Attorney Stephan A. Marino, Esq. ("Mr. Marino" or "SAM") - $900
2. Attorney Christina A. Gudaitis, Esq. ("Ms. Gudaitis" or "CAG") - $750
3. Attorney Alessia A. Rocha, Esq. ("Ms. Rocha" or "AAR") - $425
4. Attorney Allie C. Watson, Esq., ("Ms. Watson" or "ACW") - $285
5. Senior paralegal Linda M. Mulhall ("Ms. Mulhall" or "LMM") - $265
6. Paralegal Monica C. Garcia ("Ms. Garcia" or "MCG") - $255

[ECF No. 124, pp. 5–7].

General Star argues that the requested rates are too high and the reasonable rates should be as follows:

---

[5]     Only Mr. Marino, Ms. Gudaitis, Ms. Rocha, and Ms. Mulhall were involved in the appellate litigation. [ECF No. 124, pp. 5–7].

1. Mr. Marino - $450 (instead of $900)
2. Ms. Gudaitis - $400 (instead of ($750)
3. Ms. Rocha - $225 (instead of $425)
4. Ms. Watson - $225 (instead of $285)
5. Ms. Mulhall - $125 (instead of $265)
6. Ms. Garcia - $125 (instead of $255)

[ECF No. 132, p. 16].

One Sotheby's cites the following cases involving Mr. Marino, Ms. Gudaitis, Ms. Mulhall, and Ms. Garcia to illustrate the reasonableness of their hourly rates:

| | MARINO | GUDAITIS | MULHALL | GARCIA | Year | Hours | Appeal |
|---|---|---|---|---|---|---|---|
| *GEICO*[6] | $800 | n/a | $265 | n/a | 2023 | 320.6[7] | Yes |
| *Cornfeld*[8] | $600 | n/a | $255 | $230 | 2020 | 91.9 | No |
| *Jackson Tower*[9] | n/a | $600 | n/a | n/a | 2022 | 5 | No |

---

[6]    *GEICO Gen. Ins. Co. v. Gonzalez*, No. 20-21549-CV-WILLIAMS/TORRES, 2023 WL 11883712 (S.D. Fla. Oct. 30, 2023) (finding that the defendant's motion for fees and costs should be granted because the amount sought was reasonable and unopposed).

[7]    The court noted that "[the] [d]efendants employed two appellate specialists [Elliot Kula, Esq., and William Mueller, Esq.] to litigate the appeal with limited assistance from their trial counsel [Mr. Marino and Ms. Mulhall]." *Id.* at *8–9. Of the 320.6 hours spent litigating the appeal, nearly 92% of that was accrued by the appellate specialists. *Id.* at *11.

[8]    *Cornfeld Grp., LLC v. Certain Underwriters at Lloyd's, London*, No. 19-60626-CIV, 2020 WL 9549552 (S.D. Fla. Feb. 7, 2020), *report and recommendation adopted*, No. 019CV60626WPDLSS, 2020 WL 9549514 (S.D. Fla. Mar. 30, 2020) (finding that fees and costs should be granted after the defendant opposed only Mr. Marino's requested fee).

[9]    *Jackson Tower Las Olas Condo. Assoc., Inc. v. QBE Ins. Corp.*, No. CACE20020369 (17th Fla. Cir. Ct. Feb. 17, 2022) (awarding fees related to a motion to compel discovery but not stating whether those fees were reasonable). [ECF No. 116-4].

Defendant also cited to multiple cases included as exhibits to its initial motion. [ECF No. 124, pp. 8–9]. However, the Undersigned is not persuaded by any of those cases because none are binding nor relate to the at-issue attorneys or requested rates.[10] Additionally, Defendant did not include any cases where a court granted a request for attorneys fees in excess of an agreed-upon rate from a retention agreement.

In contrast, General Star cites the following cases where courts awarded Mr. Marino, Ms. Gudaitis, Ms. Mulhall, and Ms. Garcia lower hourly rates.

| | MARINO | GUDAITIS | MULHALL | GARCIA | Year | Hours | Appeal |
|---|---|---|---|---|---|---|---|
| *Weschester*[11] | $400 | $400 | $100 | $100 | 2021 | 110.30 | No |
| *SE Paint.*[12] | $450 | n/a | $125 | n/a | 2019 | 15.6 | No |
| *Ortiz*[13] | n/a | $400 | $100 | n/a | 2019 | 87.8 | No |

---

[10]     Additionally, the Undersigned notes that Defendant's discussion of *Roth v. GEICO Gen. Ins. Co.*, No. 0:16-cv-62942-WPD (S.D. Fla. Nov. 13, 2019) [ECF No. 116-3] includes information such as attorney names, hourly rates, and testimony. Defendant continuously cites to the exhibit for support. However, that exhibit (116-3) is merely two Orders from United States District Judge William P. Dimitrouleas which do not include **any** of the information Defendant relies on in its argument.

[11]     *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, No. 19-22831-CIV, 2021 WL 7542946 (S.D. Fla. Feb. 19, 2021) (finding that although the hourly rates were unopposed, the hourly rates of the attorneys should be lowered to $400 given the legal market in South Florida).

[12]     *SE Painting & Waterproofing, Inc. v. Travelers Indem. Co. of Connecticut*, No. 617CV1612ORL41GJK, 2019 WL 721337 (M.D. Fla. Jan. 17, 2019), *report and recommendation adopted*, No. 617CV1612ORL41GJK, 2019 WL 718557 (M.D. Fla. Feb. 20, 2019) (finding that attorney's fees be granted for Mr. Marino, but that they be lowered to $450).

[13]     *Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-CIV, 2019 WL 383868 (S.D. Fla. Jan. 15, 2019),*report and recommendation adopted sub nom. Capitol Specialty Ins. Corp. v. Ortiz*

| _Mid-Cont._[14] | n/a | $400 | n/a | n/a | 2018 | 96.55 | No |
|---|---|---|---|---|---|---|---|

The Undersigned finds that the hourly rates Defendant requests are not reasonable nor within the range of rates charged for similar services by attorneys or paralegals of reasonably comparable skill, experience, and reputation. The Undersigned also notes the correlation between the newly requested hourly rates and the number of hours expended.

|  | Retention Rate | Requested Rates | % Increase from Retention | Hours in district court | Hours on appeal | Experience |
|---|---|---|---|---|---|---|
| MARINO | $575 | $900 | 56.52% | 40.40 | 10.90 | 30 years |
| GUDAITIS | $575 | $750 | 30.43% | 8.60 | 14.60 | 24 years |
| ROCHA | $285 | $425 | 49.12% | 196.80 | 71.60 | 3 years |
| WATSON | $285 | $285 | 0% | 21.20 | n/a | 3 years |
| MULHALL | $145 | $265 | 82.76% | 12.00 | 18.60 | 21 years |
| GARCIA | $145 | $255 | 75.86% | 0.80 | n/a | 13 years |

Defendant argues that its requested hourly rates are warranted because: (1) General Star caused One Sotheby's delays and additional fees and (2) General Star

---

_by & Through Corona_, No. 17-23329-CIV, 2019 WL 367916 (S.D. Fla. Jan. 30, 2019) (finding that the rates requested by Ms. Gudaitis and Ms. Mulhall are disproportionate for insurance cases litigated in Miami, Florida and for the hours expended, lowering the award to $400 for Ms. Gudaitis and $100 for Ms. Mulhall).

[14]     _Mid-Continent Cas. Co. v. G.R. Constr. Mgmt., Inc._, No. 2:17-CV-55-FTM-38CM, 2018 WL 2945613 (M.D. Fla. May 25, 2018), _report and recommendation adopted_, No. 2:17-CV-55-FTM-38CM, 2018 WL 2938425 (M.D. Fla. June 12, 2018) (finding that Ms. Gudaitis' request for an hourly rate of $475 was too high and that $400 be awarded instead).

initiated the litigation so "it should therefore be 'penalize[d] for wrongfully causing its insured to resort to litigation to resolve a conflict.'" [ECF No. 124, p. 6].

However, Defendant makes this argument only in a footnote, and "addressing a legal argument only in a footnote is an incorrect method to present substantive arguments on the merits." *Connor v. Midland Credit Mgmt., Inc.*, No. 18-23023-CIV, 2019 WL 717413, at *4, n. 1 (S.D. Fla. Feb. 20, 2019) (citing *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2014 WL 5846735, at *2 n.1 (S. D. Fla. Nov. 12, 2014) (not considering argument raised in a footnote); *see also Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised only in a footnote)). Therefore, the Undersigned will not address this improperly-raised argument.

### Mr. Marino

Defendant requests that this Court award Mr. Marino an hourly rate of $900.00 (even though he agreed in the Retention to charge a $575.00 hourly rate). Defendant relies on and cites to *GEICO,* a recent case where Chief Magistrate Judge Edwin G. Torres awarded Mr. Marino an $800 hourly rate, noting that "this case was litigated out of South Florida, which is a locality wherein rates are trending higher than average." [ECF No. 124, p. 7 (quoting *GEICO,* 2023 WL 11883712 at *4)]. However, Defendant fails to mention that Mr. Marino's request was unopposed and involved a complex appeal to the point

that Mr. Marino's client had to hire two appellate specialists.[15] Here, Defendant's request is opposed and, while it does involve an appeal, the substance of the appeal did not require Defendant to hire appellate specialists.

The Undersigned previously addressed the reasonableness of Mr. Marino's hourly rate in *Houston Specialty Ins. Co. v. Fontecilla*, No. 20-20725-CIV, 2023 WL 3570169, at *5 (S.D. Fla. Mar. 31, 2023), *report and recommendation adopted*, No. 20-20725-CIV, 2023 WL 3568162 (S.D. Fla. May 19, 2023). There, Mr. Marino's client, the defendant, submitted the following to the Court:

> Fontecilla states that Mr. Marino . . . is the managing partner at [Ver Ploeg & Marino, P.A.] with almost thirty years of litigation experience; the vast majority of which has been devoted to insurance-related disputes. Mr. Marino has also been recognized every year since 2011 as a Florida "Super Lawyer." He is an [American Board of Trial Advocates] member and frequent lecturer on insurance coverage and bad faith issues. Since the initiation of this matter, Mr. Marino has been involved as the primary decision-maker and strategist. Mr. Marino has been involved in all aspects of this coverage case, including communications with Fontecilla's counsel, attendance at hearing(s), the drafting of substantive motions and oversight of case strategy.

---

[15]    Additionally, unlike here, the appellate court reversed the district court's decision in *GEICO*, 2023 WL 11883712, at *4 ("The Court also notes that this appeal involved particularly difficult questions of law. Indeed, even the Eleventh Circuit agreed that [the] [d]efendants were correct on the issue when this Court was not.")

*Id.* at \*5. This explanation almost parallel's the one Defendant provided in the Motion. [ECF No. 124, p. 5].[16] The hourly rate Mr. Marino sought two years ago in *Houston* was $600.00. *Id*. In recommending that Mr. Marino be awarded his requested $600.00 hourly rate, the Undersigned relied on the same *Cornfeld* case that Defendant cites here.[17] However, *Cornfeld* was issued in 2020, and, as Chief Magistrate Judge Torres stated, this case was litigated out of South Florida, which is a locality where rates are "trending higher than average." *GEICO*, 2023 WL 11883712 at \*4.

"Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider 'its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Id.* (quoting *Norman*, 836 F.2d at 1303).

The Undersigned disagrees with Plaintiff's contention that Mr. Marino's hourly rate should be $450.00 because it is less than both the Retention rate and amounts courts within this District (including the Undersigned) have *already* determined to be reasonable. In addition, Defendant has failed to show why Mr. Marino should be entitled

---

[16]     The only difference between this explanation and the one provided in the Motion is that the Motion amends the final sentence to state, "Mr. Marino has been involved in all aspects of this coverage case, including communicating with General Star's counsel and drafting substantive motions." [ECF No. 124, pp. 5–6].

[17]     The Undersigned notes that even though the opposing party did not object to Mr. Marino's hourly rate, the Court still conducted an independent review to assess the reasonableness of the hourly rate.

to more than $600.00 an hour when its Motion uses the same language as the motion filed in *Houston*. Based on my previous reasoning in *Houston* and the fact it was issued about a year ago, the Undersigned finds that an hourly rate of $650.00 is reasonable for Mr. Marino.

### Ms. Gudaitis

Defendant requests that this Court award Ms. Gudaitis fees based on an hourly rate of $750.00. Plaintiff objects and argues that she should not be awarded more than what other courts have found to be a reasonable hourly rate for her: $400.00. The Undersigned notes that Defendant did not request fees related to Ms. Gudaitis in its initial motion [ECF No. 116] even though the **same** billing records (which reflect Ms. Gudaitis' involvement) are attached to both the initial and revised Motion.

Plaintiff cites to a number of cases where courts have awarded Ms. Gudaitis less than her requested hourly rates, averaging $400 an hour. [ECF No. 132, p. 12]. The Undersigned will discuss only the most recent case, *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, No. 19-22831-CIV, 2021 WL 7542946, at *1 (S.D. Fla. Feb. 19, 2021).[18] *Westchester*[19] is a case where VPM represented the prevailing party and filed a motion for

---

[18]    The other decisions Plaintiff relies on were issued before 2020 and fail to reflect the current (or more recent) prevailing market rate.

[19]    *Westchester* is also a report and recommendations that the district judge never ruled on because the case settled. Therefore, it holds no precedential value. *See Leon v. Washington Mut. Bank*, F.A., 164 F.Supp.2d 1034, 1039 n. 4 (N.D. Ill. Oct. 2, 2001) ("Because the report and recommendation of the magistrate judge may or may not be accepted by

attorneys' fees. There, Ms. Gudaitis requested an hourly rate of $540.00.[20] The Court lowered it to $400 an hour because other judges within the circuit awarded attorneys with more experience less money. *Id.* at *3 ("But, even if [ ]Westchester's lawyers are outstanding (and we have nothing in this record to conclude otherwise), the requested rates are excessive for the South Florida legal market and for insurance matters. Judge O'Sullivan made this point clear in a recent insurance case, where he awarded a lawyer with 22 years of legal experience a maximum rate of $525 and scaled down every other attorney/paralegal so that their rates were commensurate with the South Florida legal market. *See Rodriguez v. GeoVera Specialty Ins. Co.*, 2020 WL 6800451, at *4 (S.D. Fla. Nov. 19, 2020) (awarding $525/hour to a lawyer with 22 years of legal experience, $450 to a lawyer with 12 years of legal experience, and $150 to paralegals).").

Similar to the scenario involving Mr. Marino, Defendant has failed to show why Ms. Gudaitis should be entitled to $750.00 an hour. "The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate." *See Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996);

---

the district judge in Rhode Island, it has no precedential authority in this case."); *Williams v. Astrue*, No. 07-2124, 2009 WL 703285, at *1 (W.D. La. Mar. 17, 2009) (same). However, the cases cited within *Westchester* remain good law and the Undersigned will consider the arguments made for their persuasiveness. Additionally, Defendant never addressed this case in its filings, and Plaintiff never highlighted *Westchester's* lack of precedential value.

[20]     The requested hourly rate for Ms. Gudaitis exceeded that of Mr. Marino's ($500.00). *Westchester Gen. Hosp., Inc.*, 2021 WL 7542946 at *3.

*Norman*, 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits"). Here, Ms. Gudaitis has 24 years of litigation experience, and, based on the reasoning in *Westchester* and *Rodriguez*, the Undersigned finds that an hourly rate of $575.00 is reasonable.

### *Ms. Rocha and Ms. Watson*

Defendant requests that this Court award VPM's associate attorneys, Ms. Rocha and Ms. Watson, fees based on an hourly rate of $425.00 and $285.00, respectively. Plaintiff objects and relies upon *Westchester* to argue that the Court should instead award them fees based on an hourly rate of $225. The Undersigned disagrees, based on my discussion of Ms. Watson's hourly rate in *Houston*:

> Fontecilla seeks a $300.00 hourly rate for its associate[ ] . . . Allie C. Watson. The Undersigned finds that this hourly rate is reasonable for associates with . . . Ms. Watson's experience in insurance coverage cases. In a declaratory judgment action on whether an insurer had a duty to defend or indemnify its insured, this Court found that an hourly rate of $300.00 was reasonable for an attorney with two years of experience. *Mt. Hawley Ins. Co. v. Las Vistas at Doral Condo. Ass'n, Inc.*, No. 19-24491-CIV, 2021 WL 2227928, at *3 (S.D. Fla. Mar. 19, 2021), *report and recommendation adopted*, No. 19-24491-CV, 2021 WL 2223367 (S.D. Fla. June 2, 2021) (Martinez, J.).

*Houston Specialty Ins. Co.*, 2023 WL 3570169, at *5.

The Undersigned notes that Ms. Rocha and Ms. Watson seemingly have the same experience ("over three years of litigation experience"), yet Ms. Rocha's requested hourly

rate is 49% higher than Ms. Watson's. [ECF No. 124, pp. 6–7]. Additionally, Defendant failed to cite any cases where courts explicitly awarded fees to either Ms. Watson or Ms. Rocha. However, Defendant did cite to *Cornfeld,* where the court awarded fees based on an hourly rate of $300.00 to one of VPM's attorneys (not included here) with approximately three years of litigation experience. *Cornfeld Grp., LLC*, 2020 WL 9549552, at *6.

Therefore, based on my review of Ms. Rocha and Ms. Watson's experience and my previous ruling in *Houston*, I find Ms. Watson's hourly rate of $285.00 to be reasonable and Ms. Rocha's hourly rate of $425.00 to be unreasonable. An hourly rate of $300.00 is reasonable for Ms. Rocha based on her litigation experience and decisions from within the circuit.

### Ms. Mulhall and Ms. Garcia

Finally, One Sotheby's requests this Court award its paralegals, Ms. Mulhall and Ms. Garcia, an hourly rate of $265.00 and $255.00, respectively. Plaintiff argues that their rates are excessive and that a reasonable rate for both paralegals is $125.00, based on the South Florida legal market.

Although Ms. Mulhall has been a paralegal for over twenty years and Ms. Garcia has been a paralegal for thirteen years, their rates far exceed the usual rates granted in the Southern District for paralegals of the same experience in insurance cases. As I stated

in *Houston Specialty Ins. Co.*, where VPM requested an hourly rate of $245.00 for Ms.

Mulhall and for another paralegal with "over 14 years of experience" (not included here),

> the Undersigned finds the requested $240.00 paralegal hourly rate to be
> excessive. In *Capitol Specialty Ins. Corp. v. Ortiz*, this Court found that the
> "requested hourly rate of $245[.00] for Ms. Mulhall [was] excessive for a
> paralegal position and, as a result, . . . reduce[d] the rate requested to
> $100.[00]." No. 17-23329-CIV, 2019 WL 383868, at *6 (S.D. Fla. Jan. 15, 2019),
> *report and recommendation adopted sub nom. Capitol Specialty Ins. Corp. v. Ortiz
> by & Through Corona*, No. 17-23329-CIV, 2019 WL 367916 (S.D. Fla. Jan. 30,
> 2019); *see also Moussa v. Certain Underwriters at Lloyd's, London*, No. 20-CV-
> 22313, 2022 WL 2195305, at *4 (S.D. Fla. Mar. 7, 2022), *report and
> recommendation adopted*, No. 20-CV-22313, 2022 WL 7513741 (S.D. Fla. Oct.
> 13, 2022) ("reducing the requested paralegal hourly rate from $230.00 per
> hour to $100 per hour" in case involving the same law firm representing
> [Defendant] Fontecilla); *Mt. Hawley Ins. Co.*, 2021 WL 2227928, at *3
> (awarding paralegal hourly rate of $100 in insurance coverage action).

2023 WL 3570169, at *5; *see also Westchester*, 2021 WL 7542946, at *4 ("The hourly rates for

[Ms. Mulhall and Ms. Garcia] should also be reduced [from $255.00 and $230.00

respectively] to no more than $100/hour because 'even substantial litigation experience

does not justify such an inflated hourly rate for a paralegal (especially in an insurance

case) in the South Florida legal market.' *Brickell E. Condo. Ass'n, Inc. v. Indian Harbor Ins.

Co.*, 2020 WL 869725, at *5 (awarding $75/hour to two experienced paralegals in an

insurance case)); *Hernandez v. Scottsdale Ins. Co.*, No. 21-CV-20687-JLK, 2023 WL 5939635,

at *3 (S.D. Fla. Aug. 28, 2023), *report and recommendation adopted*, No. 1:21-CV-20687-JLK,

2023 WL 5932920 (S.D. Fla. Sept. 12, 2023) (finding that $125.00 is a reasonable hourly rate

for paralegals in South Florida).

Other cases reach similar results. *See Purcella v. Mercantile Adjustment Bureau, LLC*, No. 18-cv-61268, 2019 WL 6462550 at *6 (S.D. Fla. Nov. 13, 2019) (finding $125.00 is a reasonable hourly rate for paralegal), *report and recommendation adopted*, No. 18-cv-61268, 2019 WL 6608900 (S.D. Fla. Dec. 5, 2019); *Corson v. Gregory Charles Interiors, LLC*, No. 9:19-cv-81445, 2020 WL 6323863, at *5 (S.D. Fla. Aug. 7, 2020) (reducing the hourly rate for a paralegal from $200.00 to $135.00 per hour), *report and recommendation adopted*, paperless order adopting report and recommendation, *Corson v. Gregory Charles Interiors, LLC*, No. 9:19-cv-81445 (S.D. Fla. Aug. 24, 2020), [ECF No. 15]).

Defendant cites to cases, including *GEICO* and *Cornfeld*, to support the paralegals' requested rates. However, as previously stated, *GEICO* is distinct from this case in its complexity, and both *GEICO* and *Cornfeld* are situations where opposing counsel did not object to the requested paralegal rates.

At bottom, based on my previous reasoning in *Houston* and recent decisions out of this Circuit, I find that both paralegals should be awarded an hourly rate of $145.00, the same as the agreed-upon retention rate.

### Conclusion on Hourly Rates

Thus, the Undersigned **respectfully recommends** that the District Court award the following hourly rates: $650.00 for Mr. Marino, $575.00 for Ms. Gudaitis, $300.00 for Ms. Rocha, $285.00 for Ms. Watson, $145.00 for both Ms. Mulhall and Ms. Garcia.

**2.     Reasonableness of Hours Expended**

The Court must next evaluate the reasonableness of the total hours expended by One Sotheby's counsel. The moving party bears the burden of providing the Court with sufficiently detailed records so that the Court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303; *see also Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011), *subsequently aff'd*, 492 F. App'x 73 (11th Cir. 2012) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action." (citing *Barnes*, 168 F.3d at 427, 432–33)).

The party requesting fees must exercise "billing judgment" and must exclude from its fees motion those hours that would be unreasonable to bill a client, and therefore to one's adversary, "irrespective of the skill, reputation, or experience of counsel." *Norman*, 836 F.2d at 1301.

In determining the number of hours reasonably expended, the Court must exclude "excessive, redundant or otherwise unnecessary hours" from those claimed. *Id*. at 1303. Judges "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or

formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

One Sotheby's seeks to recover $135,876.00 in attorney's fees for 279.80 hours expended litigating in the District Court and $56,119.00 in attorney's fees for 115.70 hours expended litigating in the Eleventh Circuit. [ECF No. 124, pp. 10–11]. Defendant attached billing records to its Motion. [ECF No. 124-4]. General Star argues that One Sotheby's is not entitled to attorney's fees for: (1) time spent litigating the amount of attorney's fees; (2) time entries which contain excessive redactions; (3) time spent on clerical tasks; and (4) time spent on pre-litigation work. [ECF No. 132, p. 17].

"If a court determines that the number of hours is unreasonably high, there are two recognized methods available to the court to reduce the amount of attorneys' fees: 'it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.'" *Grasso v. Grasso*, No. 8:13-CV-3186-T-33AEP, 2016 WL 8716273, at *4 (M.D. Fla. Oct. 21, 2016), *report and recommendation adopted*, No. 8:13-CV-3186-T33AEP, 2016 WL 7240051 (M.D. Fla. Dec. 15, 2016) (quoting *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008)). In the instant case, while One Sotheby's billing invoice consists of eighteen pages of time entries, an hour-by-hour analysis is appropriate due to General Star's objections. However, as discussed below, although a comprehensive analysis was used to pinpoint the existence of particular deficiencies, the Undersigned ultimately used an across-the-board discount.

28

*Time Spent Litigating Fees*

General Star first argues that One Sotheby's is not entitled to fees relating to time spent litigating the amount of attorney's fees. General Star contends that it had "expressly conceded One Sotheby's entitlement to attorney's fees in the event One Sotheby's was successful on appeal well before [the initial motion for fees and the renewed Motion] were filed." [ECF No. 132, p. 17]. It follows, then, that because General Star agreed to One Sotheby's entitlement to attorneys fees, that the "time expended in connection with both motions was therefore exclusively related to litigating the amount of fees." *Id.*

In its reply, One Sotheby's argues that while it agrees with General Star that it conceded entitlement after the appeal was resolved, it does *not* agree that Plaintiff conceded entitlement at the time of its initial motion. [ECF No. 133, p. 6]. Defendant highlights that its Certification of Good Faith Conference from the initial motion stated that Plaintiff's counsel said it "had no authority to agree to the relief sought [in the motion]" and that the parties agreed to stay the matter until the resolution of General Star's appeal. [ECF No. 116, p. 12]. According to One Sotheby's, this meant that General Star had not yet conceded entitlement at the time of the original motion. The Undersigned agrees.[21]

---

[21]   The Undersigned notes that the Motion's Certificate of Good Faith Conference states that Defendant "is authorized to represent that General Star objects to the relief sought herein." [ECF No. 124, p. 14].

The Eleventh Circuit has held, following a Florida Supreme Court decision, that "while attorney's fees incurred for litigating the issue of *entitlement* to attorneys fees are recoverable, fees incurred for litigating the *amount* of attorney's fees are not." *McMahan v. Toto*, 311 F.3d 1077, 1085 (11th Cir. 2002) (citing *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830 (Fla. 1993)) (emphasis added); *Illoominate Media, Inc. v. CAIR Fla., Inc.*, No. 22-10718, 2022 WL 4589357, at *5 (11th Cir. Sept. 30, 2022) ("fees incurred for litigating the amount of recoverable attorney's fees are themselves not recoverable." (citing *Palma*, 629 So. 2d at 833)).

While the parties disagree as to when General Star first conceded One Sotheby's entitlement to attorney's fees, they *do* agree that General Star (at some point) conceded entitlement. [ECF Nos. 132, p. 17; 133, p. 6]. But, problematically, neither provides the specific date when their agreement *actually* occured.[22] Therefore, the Undersigned is unable to determine which of Defendant's entries should be struck in calculating the total recommended award.

---

[22]    Included in the docket is Defendant's Unopposed Motion for Entitlement to Attorney's Fees and Motion to Transfer to the District Court. [ECF No. 125, pp. 3–10]. Defendant filed that motion before the Eleventh Circuit, and, in it, it requested that the appellate court enter an "Order granting One Sotheby's **entitlement** to attorney's fees incurred in this appeal under Fla Stat. § 627.428 and transferring consideration of such fee award to the district court." *Id*. at 8 (emphasis added). However, the unopposed motion does not address Plaintiff conceding to Defendant's entitlement to fees incurred in the district court.

*Excessive Redactions*

General Star argues that Defendant's Motion contains "such excessive redactions that One Sotheby's has not met its burden with respect to showing that the redacted entries are reasonable." [ECF No. 132, p. 18]. Plaintiff acknowledges that Defendant offered to provide its "unredacted time records to the Court upon request." *Id.* (citing ECF No. 124, p. 11 n.8). However, Plaintiff highlights that "Florida courts have repeatedly found that such a disclaimer by VPM is insufficient." *Id.* (citing *SE Painting & Waterproofing, Inc. v. Travelers Indem. Co. of Conn.*, No. 617CV1612ORL41GJK, 2019 WL 721337, at *3 (M.D. Fla. Jan. 17, 2019), *report and recommendation adopted*, No. 617CV1612ORL41GJK, 2019 WL 718557 (M.D. Fla. Feb. 20, 2019) ("It is Plaintiff's burden to provide the Court and opposing counsel with the materials necessary for the Court to grant its request." (citing *Norman*, 836 F.2d at 1303)); *Century Sur. Co. v. All Am. Lube of Boca, Inc.*, No. 21-CV-81935-AMC, 2023 WL 4972923, at *7 (S.D. Fla. June 1, 2023) ("However, the burden is on All American, not the Court, to ensure the Court has sufficient information to assess the reasonableness of its fees. Moreover, Century is entitled to consider and object to the fees sought by All American and an *in-camera* submission would improperly impede Century's ability to challenge All American's fees. *See Stephens v. Mid-Continent Cas. Co.*, No. 10-10110-CIV, 2013 WL 12248189, at *3 (S.D. Fla. Sept. 6, 2013) (J. McAililey) (reducing fee award in part due to redactions and finding

that movant's **belated offer to provide un-redacted billing records was insufficient**),

*report and recommendation adopted*, 2013 WL 12249549 (S.D. Fla. Nov. 20, 2015) (J. King)").

Defendant argues that its redactions here are distinct from those in the cases

Plaintiff cites because it redacted "only work product and privileged communications."

[ECF No. 133, p. 8]. Defendant states that its "redacted entries are comparable to the ones

in *Meyrowitz* [*v. Brendel*, No. 16-81793-CV, 2018 WL 4440492, at *6 (S.D. Fla. Sept. 17, 2018)]

and should not be deducted (*e.g.* 'Research on [redacted] and [redacted] in preparation

for drafting opposition to General Star's second motion for leave to amend.')." *Id.*

The *Meyrowitz* Court explained that it did not deduct the hours related to the

redacted entries because:

> First, after a review of Mr. Klein's time entries at DE 102-3, pgs. 1-25, the
> Court finds that a majority of the time entries are not redacted. Second, the
> Court notes that the majority of the redacted entries do not include a time
> entry and are not included in Mr. Klein's calculation of the total number of
> hours sought by each attorney. That is, [the] [d]efendant is not seeking
> attorneys' fees for many of the redacted entries. Indeed, several of the time
> entries that [the] [p]laintiffs cite to in their [r]esponse, including entries by
> Mr. Klein on September 15, 2017, and March 2, 2018, do not have a time
> entry and were not included in the total amount of hours calculated by [the]
> [d]efendant. *See* DE 102-3, pgs. 11, 17. Third, although there are several
> entries where the description has been redacted and where time for such
> redacted time entry is being sought, the Court is able to discern the legal
> work billed by [the] [d]efendant. Most of the time entries that have
> redactions, but also include a time entry, are for research. According to [the]
> [d]efendant, those time entries were redacted because a description of the
> legal research would reflect the attorneys' work product. [DE 114, pg. 8].
> An example of this kind of time entry occurs at DE 102-3, pg. 1, where Mr.
> Feldman billed 5.60 hours on December 26, 2017. The time entry reads
> "Research, REDACTED, draft reply in support of motion for sanctions;
> focus of reply REDACTED." The Court does not find that this time entry is

too vague to discern that Mr. Feldman spent 5.60 hours researching case law and drafting the [r]eply to the [m]otion for [s]anctions. In sum, when considering the time entries that include redactions, but are not completely redacted, with the entirety of the invoices submitted by Mr. Klein's law firm, the Court does not find that the entries are unacceptably vague or too heavily redacted, and will not deduct those hours from the total time billed.

2018 WL 4440492, at *6.

The Undersigned rejects Defendant's argument because, unlike *Meyrowitz*, here: (1) about 44%[23] of the time entries include a redaction; (2) Defendant seeks compensation for *all* of its listed time entries (including those with redactions); and (3) some of the time entries are so heavily redacted that the remaining language is vague and bars the Undersigned from completing the necessary analysis.

Additionally, the Undersigned disagrees with the *Meyrowitz* rationale because simply stating the verb of what occurred is too vague, and "[c]ourts have ruled that vague descriptions are inadequate to support a fee motion." *Hamilton v. Sheridan Healthcare., Inc.*, No. 13-62008-CIV, 2015 WL 13540999, at *5 (S.D. Fla. Dec. 23, 2015), *report and recommendation adopted sub nom. Hamilton v. Sheridan Healthcare, Inc.*, No. 13-62008-CIV, 2016 WL 9444229 (S.D. Fla. Jan. 14, 2016), *aff'd sub nom. Hamilton v. Sheridan Healthcorp, Inc.*, 700 F. App'x 883 (11th Cir. 2017) (citing *Walker v. U.S. Dep't of Hous. And Urban Dev.*, 99 F.3d 761, 773 (5th Cir. 1996) ("terse listings," such as "library research," "analyzing documents," "reading background documents," and "phone interviews," are "woefully

---

[23]     Defendant's billing records [ECF No. 124-4] include 626 separate entries and 276 of those entries include redactions.

inadequate to support any fee application"); *Kearney v. Auto–Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1379 (M.D. Fla. 2010) ("A court may eliminate or reduce an award where a time entry is excessively vague.")).

Below are examples of some of the problematic redactions:



[ECF No. 124-4, p. 10; 15; 17].[24]

It is difficult, if not impossible, for the Undersigned or Plaintiff to determine whether the time spent (and subsequent fees requested) on these research tasks was reasonably expended when the subject of the work is redacted. "When the subject of work performed is redacted, the court has insufficient information to determine whether the time spent on the task was reasonable." *Creative Choice Homes XXX, LLC v. Amtax Holdings 690, LLC*, No. 819CV01903TPBAAS, 2023 WL 2817366, at *7 (M.D. Fla. Apr. 5, 2023), *report and recommendation adopted*, No. 8:19-CV-1903-TPB-AAS, 2023 WL 3976001 (M.D. Fla. June 13, 2023) (quoting *People for Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.,* No. 8:16-cv-2899-T-36AAS, 2020 WL 3266524, at *4 (M.D. Fla. May 28, 2020), *report*

---

[24]  Not all of the redacted entries are this egregious. Some redact only (what seems like) a single word. *See, e.g., Id.* at 15 ("03/13/24 AAR Review deadline for Motion for Fees and email CAG ▮▮▮▮▮▮").

*and recommendation adopted*, No. 8:16-cv-2899-T-36AAS, 2020 WL 6938636 (M.D. Fla. Nov. 25, 2020)).

At bottom, "Plaintiff is entitled to consider and object to the fees sought by [Defendant] and it **must** be able to review the billing records in order to do so." *Stephens*, 2013 WL 12248189, at *3 (emphasis added). Defendant's redaction practice bars both the Court and Plaintiff from productively reviewing its billing records. The Undersigned notes that multiple courts from within this district have already put VPM on notice of its problematic practice. *Id.*; *SE Painting & Waterproofing, Inc.*, 2019 WL 721337, at *3; *All Am. Lube of Boca, Inc.*, 2023 WL 4972923, at *7.

Accordingly, I find it appropriate to reduce the total time billed due to Defendant's excessive redactions.

### *Clerical Tasks*

General Star argues that Defendant is not entitled to fees related to "work that is clerical or secretarial in nature[,]" and highlights 3.5 hours worth of problematic entries. [ECF No. 132, p. 20 (quoting *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006))]. Defendant contends that the at-issue entries involve tasks that "have been found to be compensable." [ECF No. 133, p. 8 (citing *Schwarz v. Seeman Holtz Prop. & Cas., LLC*, No. 21-CV-81005, 2023 WL 2087934, at *7 (S.D. Fla. Feb. 2, 2023), *report and recommendation adopted*, No. 21-CV-81005-RS, 2023 WL 2071844 (S.D. Fla. Feb. 17, 2023)].

Below are some of the problematic entries Plaintiff states include clerical tasks:

| | | |
|---|---|---|
| 01/13/22 MCG | Communicate (other external) with/advance documents to court re: motion to dismiss and ACW's notice of appearance | 0.30 |
| 02/17/22 LMM | Communicate (other external) advance documents to court re: corporate disclosure | 0.20 |
| 03/14/22 LMM | Communicate (other external) advance documents to court re: opposition to motion for leave | 0.20 |
| 04/22/22 LMM | Communicate (other external) advance documents to court re: motion to dismiss and motion to withdraw ACW; forward draft order to Judge | 0.40 |
| 11/28/22 MCG | Communicate and advance documents to court re: Notice of Supplemental Authority | 0.20 |
| 04/12/23 CAG | Review/analyze/approve three Notices of Appearance | 0.10 |
| 04/12/23 LMM | Communicate (other external) advance documents to court re: Notice of Appearances for SAM, MXM and AAR | 0.30 |

[ECF No. 124-4, pp. 2–4, 14].

"Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, **faxing and mailing**, updating lists and calendars, and **filing or e-filing documents**, should not be billed at a paralegal rate **regardless of who performs them**." *McGlynn v. Miami Diario LLC*, No. 22-CV-24261, 2024 WL 1910670, at *10 (S.D. Fla. Mar. 7, 2024) (emphasis added), *report and recommendation adopted*, No. 22-24261-CIV, 2024 WL 1908971 (S.D. Fla. May 1, 2024) (citing *Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017); *see also Wendel v. Int'l Real Est. News, LLC.*, No. 19-21658-CIV, 2019 WL 12278752, at *3 (S.D. Fla. Dec. 16, 2019), *report and recommendation adopted sub nom. Wendel v. Int'l Real Est. News, LLC*, No. 19-21658-CIV, 2020 WL 9552161 (S.D. Fla. Jan. 2, 2020) ("Examples of this non-legal work for an attorney or paralegal include: **input Judge assignment into ECF**, email to process server with Complaint and Summons, receive email with Affidavit of Service, and standard docket

36

review." (emphasis added)); *Maranon v. Scottsdale Ins. Co.*, No. 1:21-CV-21785-KMM, 2022 WL 18401954, at *4 (S.D. Fla. Dec. 1, 2022), *report and recommendation adopted*, No. 1:21-CV-21785-KMM, 2023 WL 359003 (S.D. Fla. Jan. 23, 2023) ("[T]he Court has deducted time spent on administrative and clerical tasks, such as communicating with the process server and reviewing a scheduling order for deadlines . . . , as such fees are not recoverable or are not necessary.").

Defendant cites *Schwarz* in support of its argument that the alleged clerical tasks "have been found to be compensable." [ECF No. 133, p. 8]. In *Schwarz*, the Court declined to reduce a fee award when an attorney billed for reviewing financial statements and drafting a notice of deposition. 2023 WL 2087934 at *7. However, the *Schwarz* rationale does not address the majority of the alleged clerical tasks because most of these problematic entries relate to filing or providing things to the Court.

Accordingly, One Sotheby's total time billed should be reduced due to these entries for clerical work which is not compensable.

### Pre-Litigation Work

Finally, General Star contends that One Sotheby's is not entitled to pre-litigation work because it was not made necessary by an insurer's unreasonable conduct. [ECF No. 132, p. 21]. Plaintiff cites to *Stavrakis v. Underwriters at Lloyd's London*, which states that "[a]lthough district courts in the Eleventh Circuit are not in complete accord, the general consensus appears to be thus: attorneys' fees for pre-suit legal work are not recoverable

under § 627.428 . . . unless the pre-suit work was necessitated by an insurer's unreasonable conduct." No. 8:16-CV-2343-EAK-JSS, 2018 WL 4908104, at *2 (M.D. Fla. June 29, 2018) (citing cases).

Plaintiff argues that the entries from October 20, 2021 to November 17, 2021 were incurred after it "had already agreed to defend One Sotheby's under a reservation of rights, and prior to the initiation of litigation." [ECF No. 132, p. 21]. Plaintiff additionally argued that "[t]he tasks reflected in those entries were not necessitated by any (even arguably) unreasonable conduct by General Star." *Id*. In its reply brief, One Sotheby's states that VPM's pre-litigation work was necessitated because:

> General Star denied coverage, and only agreed to defend One Sotheby's under a reservation of rights after counsel was hired and demanded the carrier reverse its erroneous denial and agree to defend. The reservation of rights letter unilaterally assigned defense counsel (in violation of section 627.426, Florida Statutes) and reserved its right to reimbursement of defense costs, withdraw from the defense, and file a declaratory action. In short, One Sotheby's was compelled to hire counsel because of General Star's wrongful coverage denial.

[ECF No. 133, p. 9].

The Undersigned agrees with Defendant because Plaintiff's conduct remained unreasonable by virtue of the additional positions it maintained after agreeing to defend Defendant, its insured, under a reservation of rights. Therefore, Defendant is entitled to recover fees for the work spent from October 20, 2021 to November 17, 2021.

***Block Billing*[25]**

In reviewing Defendant's billing records to address the parties' arguments, the Undersigned found multiple problematic entries related to block billing. Below are some of those problematic entries:

| | | |
|---|---|---|
| 03/10/22 ACW | Finish drafting opposition to motion to amend; submit to SAM█████; finalize for filing | 1.40 |
| 04/28/23 CAG | Review and edit motion to stay proceedings on fee issue, draft two emails to AAR re: ████████████████████████████ | 0.40 |
| 06/16/23 AAR | Review/analyze orders adopting reports and recommendations, underlying pleadings, and continue drafting Answer Brief | 5.40 |
| 02/02/24 CAG | Review SAM's email with question re: ███████████████████, calls to LMM and AAR re: ██████████ _____ | 0.40 |
| 02/28/24 CAG | Review/analyze/edit motion for entitlement and transfer, draft email to AAR re: █████ | 0.20 |
| 02/29/24 CAG | Review and make final edits to motion for entitlement, email team re: █████ | 0.20 |

[ECF No. 124-4, pp. 3, 14, 18–20].

"Block billing occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those individual tasks as separate entries on billing records." *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, No. 5:11-CV-221, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013). The practice of block billing is disfavored because it prevents the court from accurately ascertaining the amount of time spent on

---

[25]   The Undersigned notes that Plaintiff did not make any arguments based on block billing. But, as previously stated, regardless of a party's opposition, the Court must ensure that the fees it awards are reasonable. *See Valley*, 82 F. Supp. 3d at 1325.

each discrete task. *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *11 (S.D. Fla. July 1, 2008) (noting that block billing "makes it difficult to establish whether the amount of time spent on any one task was reasonable").

Nonetheless, "[a]s a general proposition block billing is not prohibited so long as the [c]ourt can determine from the time entry the services that were performed." *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-CV-355-MCR-GRJ, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 4:08CV355/MCR/GRJ, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018).

However, based on how VPM composed some of its billing entries, the Undersigned is unable to determine how much time was spent on each task. For example, Ms. Gudaitis billed .4 hours on February 2, 2024 to review an email and then make multiple phone calls. [ECF No. 124-4, p. 19]. However, because she failed to include how much she spent on each phone call or reviewing the email, the Undersigned is barred from determining whether she spent a reasonable amount of time on each task.

Therefore, the Undersigned will take Defendant's block billing into consideration when determining a reduction in fees.

### *Conclusion on Reasonableness of Hours*

In determining the number of hours reasonably expended, the Court must exclude "excessive, redundant or otherwise unnecessary hours" from those claimed. *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 436). This task may be accomplished by either

applying an hour-by-hour analysis or making an across-the-board cut. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Judges "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

Rather than conduct an hour-by-hour analysis of Defendant's submissions to account for all deficient time entries, the Undersigned will instead reduce the requested fees by 25% (after reducing, where appropriate, the hourly rates).[26] "When a trial court is confronted with a fees request which demonstrates billing inefficiencies, it is appropriate to make an 'overall reduction' in the fees award by adopting an across-the-board percentage reduction." *Procaps S.A. v. Pantheon Inc.*, 2013 WL 6238647, at *16 (S.D. Fla. Dec. 3, 2013) (quoting *MKT Reps S.A. De C.V.*, 2013 WL 1289261, at *12 (S.D. Fla. Mar. 28, 2013) (imposing 20% reduction after reducing the hourly billing rates)); *see Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of

---

[26]    This percentage reduction encompasses the myriad billing problems outlined above.

judicial resources."); *see also Truesdell v. Thomas*, No. 5:13-cv-552-Oc-10PRL, 2018 WL 6983508, at *7 (M.D. Fla. Nov. 8, 2018) ("The court has broad discretion in determining the extent to which a reduction in fees is warranted by block billing." (citing *Ferrante Treatment Techs., LLC v. Ciampi*, No. 6:06-CV1565 ORL 28KRS, 2007 WL 1128962, at *3 (M.D. Fla. Apr. 16, 2007), *report and recommendation adopted*, No. 5:13-cv-552-Oc-10PRL, 2018 WL 6620486 (M.D. Fla. Dec. 3, 2018); *All Am. Lube of Boca, Inc.*, 2023 WL 4972923, at *10 (reducing fee award by 25% to account for "excessive redactions, excessive time billed for litigating [ ] entitlement to fees, and time improperly billed for clerical, administrative, or otherwise unsupported tasks"); *Hamilton*, 2015 WL 13540999, at *10 (reducing fee award by 40% "to account for unreasonable redactions, for excessive, redundant, and unnecessary hours, for block billing, and for clerical tasks.").

## III.   CONCLUSION

Based on the reasoning above, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** One Sotheby's Motion [ECF No. 124] and award it **$103,350.00**[27] in fees.

---

[27]   The Undersigned calculated this amount by first determining the total award based on the recommended hourly rates (Mr. Marino $650.00 x 51.3 hours = $33,345.00)+ (Ms. Gudaitis $575.00 x 23.2 hours = $13,340.00)+ (Ms. Watson $285.00 x 21.2 hours = $6.042.00)+ (Ms. Rocha $300.00 x 268.4 hours = $80,520.00)+(Ms. Mulhall $145.00 x 30.6 hours = $4,437.00) + (Ms. Garcia $145.00 x .8 hours = $116.00)= $137,800.00. Then, the Undersigned subtracted 25% from $137,800.00 resulting in the amount listed above.

## IV.     OBJECTIONS

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the United States District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 31 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, on August 13, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Federico A. Moreno
All Counsel of Record